## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ASIA WHEEL CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Court No. 23-00096 |

## COMPLAINT

Plaintiff Asia Wheel Co., Ltd. ("Asia Wheel" or "Plaintiff"), by and through the undersigned counsel, White & Case LLP, alleges and states as follows:

### ADMINISTRATIVE DECISION TO BE REVIEWED

1.  Plaintiff contests the April 11, 2023, Final Scope Ruling issued by the U.S. Department of Commerce ("Commerce"), finding that certain trailer wheels produced by Asia Wheel in Thailand fall within the scope of the antidumping duty ("AD") and countervailing duty ("CVD") orders on certain steel wheels 12 to 16.5 inches in diameter ("trailer wheels") from the People's Republic of China.  *See* Commerce Memorandum, "Final Scope Ruling: Asia Wheel's Steel Wheels Processed in Thailand (Asia Wheel)" (A-570-090, C-570-091) (Apr. 11, 2023) ("Final Scope Ruling").

### JURISDICTION

2.  The Court of International Trade has jurisdiction over Asia Wheel's action pursuant to 19 U.S.C. § 1516a(a)(2)(B)(vi) and 28 U.S.C. § 1581(c).

## STANDING OF PLAINTIFF

3. Plaintiff is the producer and exporter of the trailer wheels subject to the contested determination, and Asia Wheel requested and participated in Commerce's scope inquiry that resulted in the contested determination. Plaintiff therefore is a party to the proceeding and is entitled to commence this civil action pursuant to 28 U.S.C. § 2631(c) and 19 U.S.C. § 1516a(a)(2)(B)(vi) and (d).

## TIMELINESS OF THIS ACTION

4. On April 11, 2023, Commerce issued the Final Scope Ruling through its Antidumping Duty and Countervailing Duty Centralized Electronic Service System ("ACCESS"). The thirtieth calendar day after April 11, 2023, falls on May 11, 2023. Consequently, Plaintiff timely filed its Summons within the deadline set by 19 U.S.C. § 1516a(a)(2)(A)(ii) on May 9, 2023 (*i.e.*, within 30 days after the date of mailing of a determination under 19 U.S.C. § 1516a(a)(2)(B)(vi)).

5. The thirtieth calendar day after May 9, 2023, falls on June 8, 2023. Plaintiff is therefore timely filing this Complaint within the deadline set by 19 U.S.C. § 1516a(a)(2)(A)(ii) and Rule 3(a)(2) of the Court (*i.e.*, within 30 days after the filing of the Summons).

## PROCEDURAL HISTORY AND BACKGROUND

6. ***The AD/CVD Orders' Scope:*** On September 3, 2019, Commerce issued AD and CVD orders on imports of certain steel trailer wheels from the People's Republic of China ("China"). *Certain Steel Trailer Wheels 12 to 16.5 Inches from the People's Republic of China*, 84 Fed. Reg. 45952 (Dep't Commerce Sept. 3, 2019) ("AD/CVD Orders").

7. Trailer wheels are designed, produced, and sold for use on road and highway trailers and other towable equipment. *See* AD/CVD Orders at 45954. A trailer wheel consists of two main components: a "rim" and a "disc." The rim serves as the perimeter of the wheel and supports the tire when it is attached to the disc. The disc serves as the center portion of the wheel within the rim. The rim and the disc are produced from carbon or high strength low alloy hot-rolled steel. The rim and the disc are produced separately, but they are subsequently welded together to form a wheel. The AD/CVD Orders include steel wheels, rims, and discs imported from China. *See* AD/CVD Orders at 45954 ("The products subject to these orders are certain on-the-road steel wheels, discs, and rims for tubeless tires with a nominal wheel diameter of 12 inches to 16.5 inches, regardless of width.").

8. The AD/CVD Orders also include "rims, discs, and wheels ***that have been further processed in a third country***, including, but not limited to, the painting of wheels from China and the welding and painting of rims ***and*** discs ***from China*** to form a steel wheel, or any other processing that would not otherwise remove the merchandise from the scope of the orders if performed in China." AD/CVD Orders at 45954 (emphasis added). The AD/CVD Orders expressly include wheels that are produced in a third country by welding ***both*** rims ***and*** discs from China and then imported into the United States.

9. During the original AD/CVD investigations, importers and the respondent argued that the third-country processing provision (quoted above) indicates that trailer wheels made in a third country from rims *or* discs from China – but not both – are outside the scope of the AD/CVD Orders, and recommended that Commerce modify the scope language to make this even clearer, if necessary. *See* Commerce Memorandum, RE: Final Scope Decision Memorandum for the

3

Final Antidumping Duty and Countervailing Duty Determinations (A-570-090, C-570-091) (July 1, 2019) at 23 ("Final Inv. Scope Memo").

10. In response, Commerce determined that such clarifying language was unnecessary, stating at the beginning of its final scope analysis that "the existing language sufficiently conveys the concept that third-country processing of a steel wheel ***must be of rims and discs produced in China***" for the imported merchandise to be within scope." Final Inv. Scope Memo at 22-23 (emphasis added). Commerce reiterated this position at the conclusion of its analysis, stating:

> Furthermore, as we find that the existing language sufficiently conveys the concept that third-country processing of a steel wheel ***must be of rims and discs produced in China*** and agree, generally, with the respondent/importer's understanding of this language, we do not find it necessary to adopt further clarification language proposed in the respondent/importer's affirmative scope comments.

*Id.* at 24 (emphasis added).

11. Moreover, Commerce rejected Petitioner's argument – advanced for the first time in its scope rebuttal brief – that the scope should be modified further to include trailer wheels assembled in a third country from rims "*or*" discs from China. Commerce explained,

> The Petitioner now contends . . . that either a rim *or* a disc from China would be covered by these investigations, not only a rim and a disc together. However, no such intent is obvious on the record. Indeed, the entirety of the petitioner's initial request for the relevant clarification plainly discussed the processing involved in assembly and/or coating/painting/galvanizing of the finished wheel from all necessary constituent parts (*i.e.*, both the rim and disc). Thus, Commerce understood this clarification to address exactly the circumstance that was explicitly presented, the assembly (and surface finishing) of steel wheels in a third country from all constituent parts produced in China, and no such consideration of individual constituent parts was implicit in the clarification but, rather, was presented for the first time in the rebuttal stage of this proceeding where the petitioner argues for a modification of the scope that uses the word "or" instead of "and."

Final Inv. Scope Memo at 23-24.

AMERICAS 123861243

12. *Asia Wheel's Scope Ruling Request:*  On November 10, 2020, Asia Wheel requested that Commerce issue a scope ruling to confirm that certain trailer wheels Asia Wheel produced in Thailand were not covered by the scope of the AD/CVD Orders.  Asia Wheel, "Request for Scope Ruling for Asia Wheel's Steel Trailer Wheels" (A-570-090, C-570-091) (Nov. 10, 2020) ("Scope Ruling Request").  In the request, Asia Wheel asked Commerce to confirm that trailer wheels Asia Wheel produced in Thailand using three different production methods are not covered by the scope of the AD/CVD Orders.  The three production methods are:

- **Production Method A:**  Asia Wheel produces rims in Thailand from rectangular steel plates sourced from China or a third country, and welds the Thailand-produced rims to discs sourced from China to assemble trailer wheels ("Method A Wheels").

- **Production Method B:**  Asia Wheel produces rims in Thailand from rectangular steel plates sourced from China or a third country.  Asia Wheel also produces discs in Thailand from circular steel plates sourced from China.  Asia Wheel then welds the Thailand-produced rims and Thailand-produced discs to assemble trailer wheels ("Method B Wheels").

- **Production Method C:**  Asia Wheel produces non-standard trailer wheels called "dual wheels" in Thailand.  For dual wheels, Asia Wheel produces discs in Thailand from disc blanks sourced from China.  Asia Wheel then welds the Thailand-produced discs to rims from China to assemble dual wheels ("Method C Wheels").

Scope Ruling Request at 6-7.  None of the production methods in the Scope Ruling Request uses ***both*** rims ***and*** discs from China.

5

13. Asia Wheel did not request a scope ruling from Commerce because it thought any of these trailer wheels were potentially covered by the scope of the AD/CVD Orders. Rather, Asia Wheel requested a scope ruling because it needed Commerce to confirm this for U.S. Customs and Border Protection ("CBP"), which had initiated an investigation under the Enforce and Protect Act ("EAPA"), 19 U.S.C. § 1517, to determine whether imports of such wheels from Thailand were "evading" the AD/CVD Orders on China (EAPA Investigation No. 7459). Relatedly, on December 17, 2020, CBP issued a "covered merchandise referral" to Commerce under 19 U.S.C. § 1517(b)(4), because CBP was unable to determine whether the trailer wheels at issue in EAPA Investigation No. 7459 were "covered merchandise" (*i.e.*, subject to the AD/CVD Orders).

14. ***Commerce's Scope Inquiry*:**  On March 22, 2021, in response to Asia Wheel's Scope Ruling Request, Commerce initiated a scope inquiry. *See* Commerce, "Initiation of Asia Wheel Scope Inquiry" (A-570-090, C-570-091) (Mar. 22, 2021) ("Scope Inquiry Initiation").

15. On July 12, 2021, Commerce issued a supplemental questionnaire to Asia Wheel and interested parties. *See* Commerce, "Second Supplemental Questionnaire for the Asia Wheel Co., Ltd. Ruling Request" (A-570-090, C-570-091) (July 12, 2021) ("Second Suppl. Questionnaire"). In the questionnaire, Commerce announced that it "intend{ed} to apply a substantial transformation analysis in response to {Asia Wheel's} request" with respect to Method A Wheels and Method C Wheels, and instructed Asia Wheel to provide factual information with respect to the five factors Commerce normally considers in a substantial transformation analysis.

16. In response, Asia Wheel provided legal arguments, narrative explanations, and supporting documents to demonstrate that Production Methods A and C satisfied Commerce's

AMERICAS 123861243

substantial transformation factors, such that Thailand was the country of origin. *See* Asia Wheel, "Response to the Request for Information for All Interested Parties and the Second Supplemental Questionnaire for Asia Wheel" (A-570-090, C-570-091) (Aug. 30, 2021) ("Second Suppl. Response"). In short, for Method A Wheels, the Chinese-origin discs are substantially transformed in Thailand into finished trailer wheels, whereas, for Method C Wheels, the Chinese-origin disc blanks and rims are substantially transformed in Thailand into finished trailer wheels.

17. ***Commerce's Preliminary Scope Ruling*:** On August 25, 2022, Commerce issued the preliminary scope ruling. *See* Commerce, "Preliminary Scope Ruling: Asia Wheel's Steel Wheels Processed in Thailand" (A-570-090, C-570-091) (Aug. 25, 2022) ("Prelim. Scope Ruling"). Commerce found that Method A Wheels and Method C Wheels are subject to the scope of the AD/CVD Orders, and that Method B Wheels are not subject to the scope of the AD/CVD Orders. *See* Prelim. Scope Ruling at 24.

18. Commerce denied that it had determined in the original AD/CVD investigations that only trailer wheels produced in a third country with ***both*** rims ***and*** discs from China are covered by the scope of the AD/CVD Orders. *See* Prelim. Scope Ruling at 13. At the same time, however, Commerce recognized that the AD/CVD Orders did not clearly include trailer wheels produced in a third country with only one component (rim or disc) originating from China. Consequently, Commerce conducted a "substantial transformation" analysis to determine whether Thailand or China is the country of origin of the finished trailer wheels imported into the United States for AD/CVD purposes. Commerce preliminarily determined that the Chinese-origin components

were not substantially transformed in Thailand, such that China was the country of origin of the imported Method A Wheels and Method C Wheels. *See* Prelim. Scope Ruling at 21.

19. *Asia Wheel's Briefing*: On October 5, 2022, Asia Wheel filed a case brief in the scope proceeding. *See* Asia Wheel, "Asia Wheel Scope Inquiry – Case Brief" (A-570-090, C-570-091) (October 5, 2022) ("Asia Wheel Case Brief"). First, Asia Wheel argued that the plain language of the scope of the AD/CVD Orders, as clarified by Commerce during the original AD/CVD investigations, does not include trailer wheels made in a third country using rims *or* discs from China (not both). Second, with respect to substantial transformation, Asia Wheel argued that Commerce's preliminary substantial transformation analysis was fundamentally flawed, because Commerce focused its analysis on the Chinese-origin component (*i.e.*, a disc for Method A Wheels, and a rim and disc blank for Method C Wheels), and overlooked the finished product imported into the United States. Third, Asia Wheel argued that, in the event of an affirmative final scope ruling, Commerce should direct CBP to commence suspension of liquidation no earlier than the date of the preliminary scope ruling (August 25, 2022), and not continue any prior suspension imposed by CBP, because importers lacked adequate notice that Method A Wheels and Method C Wheels are covered by the scope of the AD/CVD Orders until that date. Finally, also in the event of an affirmative scope ruling, Asia Wheel argued that only the Chinese-origin component (*i.e.*, the discs in Method A Wheels and the rims in Method C Wheels) should be subject to AD/CVD liabilities.

20. Subsequently, Asia Wheel filed a rebuttal brief in response to Petitioner's case brief. Asia Wheel, "Asia Wheel Scope Inquiry – Rebuttal Brief" (A-570-090, C-570-091) (Oct. 12, 2022).

21. ***Commerce's Final Scope Ruling*:** On April 11, 2023, Commerce issued the Final Scope Ruling. Commerce continued to find that Method A Wheels and Method C Wheels are subject to the scope of the AD/CVD Orders, and that Method B Wheels are not subject to the scope of the AD/CVD Orders. *See* Final Scope Ruling at 54.

22. Commerce found that it was appropriate to apply a substantial transformation analysis to determine the country of origin of Method A Wheels and Method C Wheels, because "the plain language of the scope is ambiguous" as to whether such wheels – where only one of the two components was from China – are covered by the scope of the AD/CVD Orders. Final Scope Ruling at 14. Commerce also continued to find that the Chinese-origin components did not undergo substantial transformation in Thailand, such that China was the country of origin for the imported Method A Wheels and Method C Wheels. *See* Final Scope Ruling at 26, 35-36. Moreover, Commerce stated that it "intend{ed} to instruct CBP to continue the suspension of liquidation for products found to be covered by the scope of the *Orders* if already suspended, and if liquidation of entries of such products is not already suspended, {it} intend{ed} to instruct CBP to suspend liquidation of entries of products found to be covered by the scope of the *Orders* effective to the date we initiated upon Asia Wheel's scope request." Final Scope Ruling at 40 (emphasis added). Finally, Commerce rejected Asia Wheel's argument that only the Chinese-origin component (rim or disc) should be subject to AD/CVD liability.

9

**STATEMENT OF CLAIMS**

**COUNT 1:  COMMERCE'S UNLAWFUL EXPANSION OF THE SCOPE OF THE AD/CVD ORDERS**

23. Plaintiff hereby restates and incorporates Paragraphs 6 through 22 by reference.

24. While Commerce may interpret the scope of antidumping and countervailing duty orders, it may not change the scope.  *See*, *e.g.*, *Ericsson GE Mobile Comm., Inc. v. United States*, 60 F.3d 778, 782 (Fed. Cir. 1995).  An expansion of the scope is impermissible and not in accordance with law.  *See*, *e.g.*, *Mitsubishi Elec. Corp. v. United States*, 802 F. Supp. 455, 460 (Ct. Int'l Trade 1992).  Here, the plain language of the scope of the AD/CVD Orders on trailer wheels from China, as interpreted by Commerce in the original AD/CVD investigations, does not reasonably include trailer wheels manufactured in a third country using either Chinese-origin rims *or* Chinese-origin discs (but not both).  Because Asia Wheel produces Method A Wheels and Method C Wheels in Thailand using only Chinese-origin rims or Chinese-origin discs (but not both), Commerce unlawfully expanded the scope of the AD/CVD Orders to include these trailer wheels.  Therefore, Commerce's final scope ruling is unsupported by substantial evidence and otherwise not in accordance with law.

**COUNT 2:  COMMERCE'S FLAWED SUBSTANTIAL TRANSFORMATION ANALYSIS AND DETERMINATION**

25. Plaintiff hereby restates and incorporates Paragraphs 6 through 22 by reference.

26. Commerce unreasonably determined – based on a "substantial transformation" analysis – that China is the country of origin for AD/CVD purposes of the Method A Wheels and Method C Wheels manufactured by Asia Wheel in Thailand.  With respect to Method A Wheels, Commerce unreasonably concluded that Chinese-origin discs did not undergo substantial

transformation when Asia Wheel used them to manufacture trailer wheels in Thailand. Similarly, with respect to Method C Wheels, Commerce unreasonably concluded that Chinese-origin rims did not undergo substantial transformation when Asia Wheel used them to manufacture trailer wheels in Thailand. Commerce's "substantial transformation" analysis is fundamentally flawed, because Commerce disregarded the finished products – trailer wheels – imported into the United States. Commerce's determination that China is the country of origin for the Method A Wheels and Method C Wheels manufactured in Thailand is unsupported by substantial evidence and otherwise not in accordance with law.

## COUNT 3: SUSPENSION OF LIQUIDATION ERROR

27. Plaintiff hereby restates and incorporates Paragraphs 6 through 22 by reference.

28. Commerce unlawfully directed CBP "to continue" to suspend liquidation of imports of Method A Wheels and Method C Wheels from Thailand, even if the imports were entered before the date of Commerce's preliminary scope ruling or the date of initiation of the scope inquiry. Under established case law, irrespective of 19 C.F.R. § 351.225(l) (2020), suspension of liquidation must not commence until importers are provided adequate notice concerning whether certain products are covered by the scope of AD and CVD orders. *See Tai-Ao Aluminum (Taishan) Co. v. United States*, 983 F.3d 487, 497 (Fed. Cir. 2021); *Trans Tex. Tire, LLC v. United States*, 519 F. Supp. 3d 1275, 1288 (Ct. Int'l Trade 2021). Here, in light of the plain language of the scope of the AD/CVD Orders, as interpreted by Commerce during the original AD/CVD investigations, importers of Method A Wheels or Method C Wheels lacked adequate notice that these wheels were potentially subject to the orders until issuance of Commerce's

11

preliminary scope ruling (August 25, 2022) or, at the earliest, when Commerce initiated the scope inquiry (March 22, 2021).

29. Furthermore, although 19 C.F.R. § 351.225(l)(1) and (l)(2) instruct that a previous "suspension of liquidation will be continued" if Commerce's scope determination is affirmative, these regulatory provisions apply only when CBP has made a "determination" under 19 U.S.C. § 1500(c) that the products in question are subject to the AD or CVD order. *See Sunpreme Inc. v. United States*, 946 F.3d 1300, 1317-18 (Fed. Cir. 2020). Here, CBP did not determine that Method A Wheels and Method C Wheels manufactured in Thailand are subject to the AD/CVD Orders on trailer wheels from China; rather, CBP was unable to make that determination and therefore referred the question to Commerce under 19 U.S.C. § 1517(b)(4) (covered merchandise referral). Moreover, CBP's prior suspension of liquidation as an "interim measure" in the EAPA investigation was invalid, because 19 U.S.C. § 1517(e) (interim measures) only applies to "covered merchandise" – a determination CBP did not make.

30. For these reasons, Commerce's decision to instruct CBP to continue to suspend liquidation – even with respect to imports of Method A Wheels and Method C Wheels entered before Commerce's initiation of the scope inquiry or issuance of the preliminary scope ruling – is not in accordance with law. Rather, Commerce should have directed CBP to commence suspension of liquidation no earlier than March 22, 2021 (the initiation date) or August 25, 2022 (the preliminary scope ruling date).

AMERICAS 123861243

## COUNT 4:  UNLAWFUL EXPANSION OF AD/CVD LIABILITY

31. Plaintiff hereby restates and incorporates Paragraphs 6 through 22 by reference.

32. The scope of the AD/CVD Orders "includes *rims, discs, and wheels* that have been further processed in a third country . . . ." AD/CVD Orders at 45954 (emphasis added).  With respect to Method A Wheels, a Chinese-origin *disc* is further processed in Thailand; consequently, only the disc component could be covered by the AD/CVD Orders.  Likewise, with respect to Method C Wheels, a Chinese-origin *rim* is further processed in Thailand; consequently, only the rim component could be covered by the AD/CVD Orders.  Commerce, however, determined that the entire wheel manufactured in Thailand – the Method A Wheel or the Method C Wheel – is subject to AD/CVD liability.  Commerce's determination is inconsistent with the plain language of the scope and, therefore, not in accordance with law.  Commerce's determination is also inconsistent with its "substantial transformation" analysis and, therefore, unsupported by substantial evidence.

## PRAYER FOR RELIEF AND JUDGMENT

WHEREFORE, Plaintiff respectfully requests that the Court:

(A) Enter judgment in favor of Plaintiff;

(B) Hold that Commerce's Final Scope Ruling is not in accordance with law and unsupported by substantial record evidence with respect to the claims advanced in this Complaint;

(C) Remand the Final Scope Ruling to Commerce for determination consistent with the opinion of this Court;

(D) Award Plaintiff a judgment for costs, including reasonable attorney fees, in accordance with the Equal Access to Justice Act, 28 U.S.C. § 2412; and

(E) Grant Plaintiff such additional relief as the Court may deem just and proper.

                Respectfully submitted,

                /S/ Jay C. Campbell
                Walter J. Spak
                Jay C. Campbell
                Chunfu Yan

                WHITE AND CASE LLP
                701 Thirteenth Street, NW
                Washington, DC 20005
                (202) 626-3600

Date:  June 8, 2023

AMERICAS 123861243