## UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE

| | |
|---|---|
| ASIA WHEEL CO., LTD.,<br><br>     Plaintiff,<br><br> and<br><br>TRAILSTAR LLC, LIONSHEAD SPECIALTY TIRE AND WHEEL LLC,<br><br>     Consolidated Plaintiffs,<br><br> and<br><br>TEXTRAIL, INC.,<br><br>     Plaintiff-Intervenor,<br><br> v.<br><br>UNITED STATES,<br><br>     Defendant,<br><br> and<br><br>DEXSTAR WHEEL DIVISION OF AMERICANA DEVELOPMENT, INC.,<br><br> Defendant-Intervenor. | Consol. Court No. 23-00096 |

### AMENDED PLAINTIFF'S, CONSOLIDATED PLAINTIFFS', AND PLAINTIFF-INTERVENOR'S MOTION FOR JUDGMENT ON THE AGENCY RECORD AND ACCOMPANYING MEMORANDUM OF POINTS AND AUTHORITIES

Jay C. Campbell
Walter J. Spak
Chunfu Yan
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005

Jordan C. Kahn
GRUNFELD DESIDERIO LEBOWITZ
SILVERMAN & KLESTADT, LLP
1201 New York Ave., NW Ste. 650
Washington, DC 20005

Nancy A. Noonan
Yun Gao
Leah N. Scarpelli
ARENTFOX SCHIFF LLP
1717 K Street, NW
Washington, DC 20006-5344

R. Kevin Williams
CLARK HILL
130 E. Randolph Street, Suite 3900
Chicago, IL 60601

November 20, 2023

## TABLE OF CONTENTS

RULE 56.2 STATEMENT AND SUMMARY OF ARGUMENT ................................................. 1

I.    ADMINISTRATIVE DETERMINATION OF WHICH REVIEW IS SOUGHT ............. 1

II.   ISSUES PRESENTED AND SUMMARY OF THE ARGUMENT................................. 2

      A.    Whether Commerce Impermissibly Expanded the Scope of the *AD/CVD Orders* Contrary to the Orders' Plain Language and Commerce's Interpretation of that Language in the Original AD/CVD Investigations...............2

      B.    Whether Commerce's Determination that Chinese-Origin Wheel Components Were Not Substantially Transformed into Wheels in Thailand Is Unsupported by Substantial Evidence and Not in Accordance with Law ..........2

      C.    Whether Commerce's Decision to Impose AD/CVD Liability on the Entire Imported Trailer Wheel – As Opposed to Only the Subject Merchandise Incorporated in the Wheel – Is Unsupported by Substantial Evidence and Otherwise Not in Accordance with Law ..........................................3

      D.    Whether Commerce Impermissibly Directed U.S. Customs and Border Protection to Continue to Suspend Liquidation of Imports Entered before the Date of Initiation of the Scope Inquiry .............................................3

STATEMENT OF FACTS ..................................................................................... 4

I.    COMMERCE'S DEFINITION OF THE SCOPE IN THE ORIGINAL AD/CVD INVESTIGATIONS .................................................................................. 4

      A.    Proposed Scope upon Initiation of the AD/CVD Investigations ............................5

      B.    Commerce's Preliminary Scope Determination in the AD/CVD Investigations ..................................................................................6

      C.    Commerce's Final Scope Determination in the AD/CVD Investigations ..............7

II.   INITIATION OF ENFORCE AND PROTECT ACT INVESTIGATION ....................... 9

III.  COMMERCE'S SCOPE INQUIRY ADDRESSING TRAILER WHEELS MANUFACTURED BY ASIA WHEEL IN THAILAND ............................................. 11

      A.    Commerce's Preliminary Scope Ruling......................................................14

      B.    Asia Wheel's and the Importers' Briefing ...............................................15

      C.    Commerce's Final Scope Ruling .............................................................15

IV.    CBP'S EAPA DETERMINATION ................................................................. 17

ARGUMENT ........................................................................................................ 18

I.    COMMERCE'S INTERPRETATION OF THE SCOPE IS UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND NOT IN ACCORDANCE WITH LAW ............... 18

    A.    The Plain Language of the Scope Does Not Include Trailer Wheels Manufactured in a Third Country If Only One of Two Wheel Components Is of Chinese-Origin ............................................................................. 19

    B.    Commerce's Interpretation of the Scope Based on the § 351.225(k)(1) Primary Interpretive Sources Is Unsupported by Substantial Evidence ............... 20

        1.    Commerce determined in the AD/CVD investigations that wheels made in third countries with rims *or* discs from China (but not both) are outside the scope ......................................................... 21

        2.    Commerce recharacterized its scope analysis from the AD/CVD investigations ................................................................. 23

    C.    Conclusion ..................................................................................... 26

II.    COMMERCE'S "SUBSTANTIAL TRANSFORMATION" ANALYSIS IS UNLAWFUL AND UNSUPPORTED BY SUBSTANTIAL EVIDENCE ..................... 27

III.    COMMERCE'S DETERMINATION THAT THE ENTIRE FINISHED WHEEL MANUFACTURED IN THAILAND IS WITHIN THE SCOPE OF THE *AD/CVD ORDERS* IS UNLAWFUL AND UNSUPPORTED BY SUBSTANTIAL EVIDENCE ........................................................................... 32

IV.    COMMERCE IMPERMISSIBLY DIRECTED CBP TO CONTINUE TO SUSPEND LIQUIDATION OF IMPORTS ENTERED BEFORE THE DATE OF INITIATION OF THE SCOPE INQUIRY ........................................................ 34

    A.    The Importers Did Not Receive Fair Warning That Trailer Wheels Produced in Third Countries from Chinese "Rims Or Discs" Were Subject To The *AD/CVD Orders* and Could Be Assessed Duties ....................................... 34

    B.    Commerce Unlawfully "Continued" CBP's Prior Suspension of Liquidation ...................................................................................... 40

CONCLUSION AND RELIEF SOUGHT ................................................................ 45

ii

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adams v. U.S. Forest Serv.*,
  671 F.3d 1138 (9th Cir. 2012) ................................................................19

*Allegheny Bradford. Corp. v. United States*,
  342 F. Supp. 2d 1172 (Ct. Int'l Trade 2004) ............................................18, 20, 32

*Aspects Furniture Int'l Inc. v. United States*,
  607 F. Supp. 3d 1246 (Ct. Int'l Trade 2022) ........................................43

*Bell Supply Co., LLC v. United States*,
  888 F.3d 1222 (Fed. Cir. 2018)........................................27, 28, 30, 31

*Bestfoods v. United States*,
  165 F.3d 1371 (Fed. Cir. 1999)........................................................28

*Canadian Solar, Inc. v. United States*,
  918 F.3d 909 (Fed. Cir. 2019)........................................................42

*Chr. Bjelland Seafoods A/S v. United States*,
  19 C.I.T. 35 (1995) ........................................................17, 34

*Christopher v. SmithKline Beecham Corp.*,
  567 U.S. 142 (2012)........................................................35

*Consol. Edison Co. v. NLRB*,
  305 U.S. 197 (1938)........................................................17

*Diamond Tools Technology LLC v. United States*,
  545 F. Supp. 3d 1324 (Ct. Int'l Trade 2021) ........................................44

*Duferco Steel, Inc. v. United States*,
  296 F.3d 1087 (Fed. Cir. 2002)........................................18, 19, 20

*DuPont Teijin Films USA v. United States*,
  407 F.3d 1211 (Fed. Cir. 2005)........................................17

*E.I. DuPont de Nemours & Co. v. United States*,
  8 F. Supp. 2d 854 (Ct. Int'l Trade 1998) ........................................27, 28

*Eckstrom Indus., Inc. v. United States*,
  254 F.3d 1068 (Fed. Cir. 2001)........................................20, 32

AMERICAS 125457403

*Katunich v. Donovan*,
  599 F. Supp. 985 (Ct. Int'l Trade 1984) ...........................................................29

*MacDonald v. Pan Am. World Airways, Inc.*,
  859 F.2d 742 (9th Cir. 1988) (Kozinski, J., dissenting)......................................20

*Meridian Prods., LLC v. United States*,
  851 F.3d 1375 (Fed. Cir. 2017)...................................................17, 19, 20, 21

*Micron Tech. Inc. v. United States*,
  117 F.3d 1386 (Fed. Cir. 1997)............................................................................17

*Mid Continent Nail Corp. v. United States*,
  725 F.3d 1295 (Fed. Cir. 2013)............................................................................35

*Mitsubishi Elec. Corp. v. United States*,
  802 F. Supp. 455 (Ct. Int'l Trade 1992) ..............................................................32

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983)...........................................................................................31, 33

*NMB Sing. Ltd. v. United States*,
  557 F.3d 1316 (Fed. Cir. 2009)............................................................................29

*Smith Corona Corp. v. United States*,
  915 F.2d 683 (Fed. Cir. 1990)..............................................................................20

*Sunpreme Inc. v. United States*,
  946 F.3d 1300 (Fed. Cir. 2020)......................................................................42, 44

*Tai-Ao Aluminum (Taishan) Co. v. United States*,
  983 F.3d 487 (Fed. Cir. 2020)..................................................................... passim

*Tai-Ao Aluminum (Taishan) Co. v. United States*,
  391 F. Supp. 3d 1301 (Ct. Int'l Trade 2019),
  *opinion affirming remand*, 415 F. Supp. 3d 1391 (Ct. Int'l Trade 2019) ...................38, 39, 40

*Target Corp. v. United States*,
  609 F.3d 1352 (Fed. Cir. 2010)............................................................................17

*Timken U.S. Corp. v. United States*,
  421 F.3d 1350 (Fed. Cir. 2005)............................................................................31

*Trans Texas Tire, LLC ("TTT") v. United States*,
  519 F.Supp.3d 1275 (CIT 2021)........................................................35, 39, 40, 44

*Trans Texas Tire, LLC v. United States*,
  545 F. Supp. 3d 1374 (Ct. Int'l Trade 2021) ............................................39, 40, 43

iv

*USX Corp. v. United States*,
  655 F. Supp. 487 (Ct. Int'l Trade 1987) ...................................................................17, 34

## STATUTES AND REGULATIONS

19 U.S.C. 1517(e)} ...........................................................................................................42

19 U.S.C. § 1516a(b)(1)(B)(i) ...........................................................................................17

19 U.S.C. § 1517(a)(3) .......................................................................................................42

19 U.S.C. § 1517(b)(4) .......................................................................................................11

19 U.S.C. § 1517(c)(1)(A) ..................................................................................................43

19 C.F.R. § 351.225(l)(3) ...................................................................................................41

19 C.F.R. § 165.41 ..............................................................................................................17

19 C.F.R. § 351.225 ............................................................................................................19

19 C.F.R. § 351.225(k) .......................................................................................................19

19 C.F.R. § 351.225(k)(1) ..........................................................................................2, 20, 21

19 C.F.R. § 351.225(l) ........................................................................................................41

Enforce and Protect Act of 2015,
  Pub. L. 114-125, 130 Stat. 122, 155, Feb. 24, 2016 ........................................... passim

## ADMINISTRATIVE DETERMINATIONS & PUBLICATIONS

*Aluminum Extrusions from China: Affirmative Preliminary Determination of Circumvention of
  AD/CVD Orders and Intent To Rescind Minor Alterations Anti-Circumvention Inquiry*,
  81 Fed. Reg. 79,444 (Dep't Commerce Nov. 14, 2016) ..........................................38

*Aluminum Extrusions from China: Initiation of Anti-Circumvention Inquiry*,
  81 Fed. Reg. 15,039 (Dep't Commerce Mar. 21, 2016)...........................................38

*Certain Steel Trailer Wheels 12 to 16.5 Inches from the People's Republic of China:
  Antidumping Duty and Countervailing Duty Orders*,
  84 Fed. Reg. 45952 (Dep't Commerce Sept. 3, 2019) .................................... passim

*Certain Steel Wheels 12 to 16.5 Inches in Diameter From the People's Republic of China:
  Initiation of Countervailing Duty Investigation*,
  83 Fed. Reg. 45100 (Dep't Commerce Sept. 5, 2018)..........................................4, 5

AMERICAS 125457403

*Certain Steel Wheels 12 to 16.5 Inches in Diameter From the People's Republic of China:*
  *Initiation of Less- Than-Fair-Value Investigation,*
  83 Fed. Reg. 45095 (Dept. Commerce Sept. 5, 2018) ..........................................................4, 5

*Certain Steel Wheels 12 to 16.5 Inches in Diameter From the People's Republic of China: Notice*
  *of Covered Merchandise Referral,*
  86 Fed. Reg. 10245 (Dep't Commerce Feb. 19, 2021) ...............................................11, 14, 41

*Certain Steel Wheels 12 to 16.5 Inches in Diameter From the People's Republic of China:*
  *Preliminary Affirmative Countervailing Duty Determination,*
  84 Fed. Reg. 5989 (Dep't Commerce Feb. 25, 2019) ..................................................................5

*Certain Steel Wheels 12 to 16.5 Inches in Diameter From the People's Republic of China:*
  *Preliminary Affirmative Determination of Sales at Less Than Fair Value, and Preliminary*
  *Affirmative Determination of Critical Circumstances,*
  84 Fed. Reg. 16643 (Dep't Commerce Apr. 22, 2019) ................................................7, 8, 9, 21

*Regulations to Improve Administrative and Enforcement of Antidumping and Countervailing*
  *Duty Laws,*
  86 Fed. Reg. 52300 (Dep't Commerce Sept. 20, 2021) ...........................................................19

U.S. Customs and Border Protection, Notice of Determination as to Evasion (Aug. 7, 2023),
  available at: https://www.cbp.gov/document/publications/eapa-cons-investigation-7459-
  lionshead-specialty-tire-and-wheel-llc-tex-trail.......................................................................17

AMERICAS 125457403

On behalf of Plaintiff Asia Wheel Co., Ltd. ("Asia Wheel"); Consolidated Plaintiffs TRAILSTAR LLC ("TRAILSTAR") and Lionshead Specialty Tire and Wheel LLC ("Lionshead"), and Plaintiff-Intervenor TexTrail, Inc. ("TexTrail")[1] (collectively, the "Importers"); we hereby submit this Motion for Judgment on the Agency Record and Accompanying Memorandum of Points and Authorities with regard to the four Counts set forth in the Complaints filed on June 8, 2023, and June 9, 2023. *See* Complaint, Ct. No. 23-00096, ECF No. 11; Complaint, Ct. No. 23-00097, ECF No. 9; Complaint, Ct. No. 23-00098, ECF No. 14; Complaint, Ct. No. 23-00099, ECF No. 9. For the reasons provided below, Asia Wheel and the Importers respectfully request that the Court hold that the challenged determination of the U.S. Department of Commerce ("Commerce") is unsupported by substantial evidence and otherwise not in accordance with law.

**RULE 56.2 STATEMENT AND SUMMARY OF ARGUMENT**

## I.     ADMINISTRATIVE DETERMINATION OF WHICH REVIEW IS SOUGHT

Asia Wheel and the Importers seek review of Commerce's final scope ruling that certain trailer wheels produced by Asia Wheel in Thailand fall within the scope of the antidumping duty ("AD") and countervailing duty ("CVD") orders on certain steel trailer wheels 12 to 16.5 inches in diameter ("trailer wheels") from the People's Republic of China ("China"). *See* Commerce Memorandum, RE: Final Scope Ruling: Asia Wheel's Steel Wheels Processed in Thailand (Asia Wheel) (A-570-090, C-570-091) (Apr. 11, 2023) ("*Final Scope Ruling*"), Appx2782-2853;[2] *Certain Steel Trailer Wheels 12 to 16.5 Inches from the People's Republic of China*, 84 Fed. Reg. 45952 (Dep't Commerce Sept. 3, 2019) ("*AD/CVD Orders*").

---

[1] TexTrail is also a Consolidated Plaintiff.

[2] For documents in the administrative record with both confidential and public versions, we cite the joint appendix page(s) for the business proprietary version.

## II.    ISSUES PRESENTED AND SUMMARY OF THE ARGUMENT

This memorandum addresses four issues with respect to Commerce's *Final Scope Ruling*.

### A.    Whether Commerce Impermissibly Expanded the Scope of the *AD/CVD Orders* Contrary to the Orders' Plain Language and Commerce's Interpretation of that Language in the Original AD/CVD Investigations

Yes.  While Commerce has the authority to clarify the scope of an AD/CVD order, it is impermissible for Commerce to interpret an order contrary to its terms or the primary interpretive sources listed in 19 C.F.R. § 351.225(k)(1).  Here, in concluding that the scope of the *AD/CVD Orders* was ambiguous with respect to coverage of wheels made in third countries with rims *or* discs – the two essential components of a wheel – from China, Commerce impermissibly disregarded the plain scope language's use of "rims *and* discs from China."   In addition, Commerce unreasonably denied that during the original AD/CVD investigations it had confirmed in response to a specific request from importers that "the existing {scope} language sufficiently conveys the concept that third-country processing of a steel wheel ***must be of rims and discs produced in China*** and agree, generally, with the respondent/importer's understanding of this language . . . ."  (Emphasis added.)

### B.    Whether Commerce's Determination that Chinese-Origin Wheel Components Were Not Substantially Transformed into Wheels in Thailand Is Unsupported by Substantial Evidence and Not in Accordance with Law

Yes.  In finding that Chinese-origin wheel components (discs) were not "substantially transformed" into finished wheels in Thailand, Commerce ignored the fundamental question of whether the processing in Thailand resulted in a product with a new name, character, and use, contrary to binding case law.   In addition, despite undisputed evidence submitted by the petitioner that a wheel requires two essential components – a rim and a disc – to achieve the characteristics and function of a finished wheel, Commerce nonsensically reasoned that the

AMERICAS 125457403

Chinese-origin disc alone already exhibited the essential characteristics of a finished wheel, contrary to the substantial evidence standard.

> **C.    Whether Commerce's Decision to Impose AD/CVD Liability on the Entire Imported Trailer Wheel – As Opposed to Only the Subject Merchandise Incorporated in the Wheel – Is Unsupported by Substantial Evidence and Otherwise Not in Accordance with Law**

Yes.  Although only one wheel component (a disc) was exported from China, Commerce determined that the entire finished wheel imported into the United States was subject to AD/CVD liability.  In doing so, Commerce impermissibly expanded the scope of the *AD/CVD Orders* – which is limited to Chinese-origin "rims, discs, and wheels that have been further processed in a third country" – contrary to its terms.  In addition, Commerce's decision contradicted its substantial transformation analysis, rendering its decision unsupported by substantial evidence.  Because Commerce determined that Chinese-origin discs were not substantially transformed in Thailand, Commerce lacked any factual basis to impose AD/CVD liability on the nonsubject parts of the wheel added in Thailand.

> **D.    Whether Commerce Impermissibly Directed U.S. Customs and Border Protection to Continue to Suspend Liquidation of Imports Entered before the Date of Initiation of the Scope Inquiry**

Yes.  The importers lacked adequate notice that the trailer wheels manufactured in Thailand with rims ***or*** discs (but not both) from China were covered by the *AD/CVD Orders* on China until March 22, 2021, the date on which Commerce initiated a scope inquiry to address the question for those wheels.  Nevertheless, Commerce unlawfully declined to instruct U.S. Customs and Border Protection ("CBP" or "Customs") to terminate a prior suspension of liquidation imposed by CBP under the Enforce and Protect Act prior to that date.  Commerce's decision violated the broader due-process principle that importers must have fair warning before their imported merchandise is subject to AD/CVD liability.  In this case, Commerce's unlawful

decision will subject the Importers to millions of dollars in retroactive AD/CVD liability without fair warning because the combined AD/CVD rate exceeds 400%.

## STATEMENT OF FACTS

**I.    COMMERCE'S DEFINITION OF THE SCOPE IN THE ORIGINAL AD/CVD INVESTIGATIONS**

On August 28, 2018, Commerce initiated AD and CVD investigations of trailer wheels from China in response to petitions filed by Dexstar Wheel Division of Americana Development, Inc. ("Dexstar" or "Petitioner") on August 8, 2018. *Certain Steel Wheels 12 to 16.5 Inches in Diameter from the People's Republic of China*, 83 Fed. Reg. 45095 (Dept. Commerce Sept. 5, 2018) ("*AD Initiation*"); *Certain Steel Wheels 12 to 16.5 Inches in Diameter from the People's Republic of China*, 83 Fed. Reg. 45100 (Dep't Commerce Sept. 5, 2018) ("*CVD Initiation*").

A trailer wheel consists of two main components:  a rim and a disc.  "The rim comprises the perimeter of the wheel and supports the tire when it is attached to the disc{,} while the disc serves as the center portion of the wheel within the rim."  Asia Wheel Response to 2nd Supplemental Questionnaire (A-570-090, C-570-091) (Aug. 30, 2021) ("*Asia Wheel Substantial Transformation Submission*") at Exhibit RFI-ALL-4 (Petition, Vol. I at I-10), Appx80942.  As Dexstar acknowledged, both the rim and disc are essential components of the finished trailer wheel.  *See id.* at Exhibit RFI-ALL-3 (Petitioner Letter, RE: Petitioner's Request for Clarification of Country of Origin Criteria (A-570-090, C-570-091) (Mar. 1, 2019) at 8-9), Appx80938-80939; *Final Scope Ruling* at 29, Appx2810 ("the rim and the disc are the essential components of the wheel").  The image below depicts the disc, rim, and complete trailer wheel (before the painting/coating process):



(Letter from White & Case to Commerce, RE: Request for Scope Ruling for Asia Wheel's Steel Trailer Wheels (A-570-090, C-570-091) (Nov. 10, 2020) ("*Asia Wheel Scope Ruling Request*") at Exhibit 4, Appx80063)

The scope of the AD/CVD investigations included steel wheels, rims, and discs imported from China. *See Asia Wheel Scope Ruling Request* at Exhibit 2 (Commerce Memorandum, RE: Preliminary Scope Decision Memorandum (A-570-090, C-570-091) (Apr. 15, 2019) at 1 ("*Prelim. INV Scope Memo*")), Appx80028.

### A.    Proposed Scope upon Initiation of the AD/CVD Investigations

At the time of initiation in August 2018, the proposed scope of the AD/CVD investigations did not include language covering trailer wheels, rims, or discs from China that undergo further processing in a third country. *See AD Initiation*, 83 Fed. Reg. at 45100; *CVD Initiation*, 83 Fed. Reg. at 45104; *Prelim. INV Scope Memo* at 1-2, Appx80028-80029. Nor did the scope include any such language in the preliminary CVD determination issued by Commerce in February 2019. *See Certain Steel Wheels 12 to 16.5 Inches in Diameter from the People's Republic of China*, 84 Fed. Reg. 5989, 5991 (Dep't Commerce Feb. 25, 2019) (prelim. CVD determ.). Later in March 2019, however, Dexstar proposed amending the scope to include the following "third-country-processing" provision:

> The scope includes rims, discs, and wheels that have been further processed in a third country, including, but not limited to, the welding and painting of ***rims and discs*** to form a steel wheel, or any other processing that would not otherwise

remove the merchandise from the scope of the investigations if performed in the People's Republic of China.

*See Prelim. INV Scope Memo* at 7 (emphasis added); Appx80032.

In response, Zhejiang Jingu Company Limited ("Zhejiang Jingu"), a Chinese mandatory respondent in the AD/CVD investigations and an affiliate of Asia Wheel, argued that Chinese-origin rims and discs that are welded and painted in third countries should be considered outside the scope – as wheel components that are "substantially transformed" into finished wheels in the third country, such that the third country is the country of origin, not China. *See Prelim. INV Scope Memo* at 7, Appx80032. In the alternative, Zhejiang Jingu argued that Dexstar's proposed third-country-processing provision should be amended "to require that the rim and disc both be of Chinese origin." *Id.*, Appx80032. Likewise, Tredit Tire & Wheel Co., Inc. ("Tredit"), an importer, argued that:

> {T}he limitation to rims and discs produced in China should be made explicit, rather than stated ambiguously as in the petitioner's current proposed scope language, to make clear the petitioner's intent that the scope covers . . . rims and discs produced in China that are welded and painted in a third country.

*Id.* at 8, Appx80033.

### B. Commerce's Preliminary Scope Determination in the AD/CVD Investigations

In the preliminary scope determination, issued after the preliminary CVD determination and simultaneously with the preliminary AD determination, Commerce declined to conduct a substantial transformation analysis to determine the country of origin for Chinese-origin rims and discs that are welded and painted in a third country to make a finished steel wheel. *See Prelim. INV Scope Memo* at 9, Appx80034. Commerce noted that it "has incorporated such third-country processing language in other recent investigation scopes without conducting a substantial transformation analysis." *Id.*, Appx80034.

At the same time, however, Commerce "agree{d} with Zhejiang Jingu and Tredit that the proposed scope amendment should include further clarifying language." *Prelim. INV Scope Memo* at 10, Appx80035. Based on its understanding that Dexstar was "requesting that rims and discs *from China* that have been further processed in a third country into finished steel wheels be included within scope{,}" Commerce "clarified the petitioner's proposed scope language to reflect the petitioner's intention." *Id.* at 10-11 (emphasis added), Appx80035-80036. Specifically, Commerce added the qualifier "from China" to Dexstar's proposed third-country-processing provision, as follows:

> The scope includes rims, discs, and wheels that have been further processed in a third country, including, but not limited to, the painting of wheels from China and the welding and painting of *rims and discs <u>from China</u>* to form a steel wheel, or any other processing that would not otherwise remove the merchandise from the scope of the investigations if performed in China.

*Id.* at 8, 13 (emphasis added), Appx80033, Appx80038. This amended scope language was included in the preliminary AD determination issued by Commerce in April 2019. *Certain Steel Wheels 12 to 16.5 Inches in Diameter from the People's Republic of China*, 84 Fed. Reg. 16643, 16646 (Dep't Commerce Apr. 22, 2019) (prelim. AD determ.) ("*Preliminary AD Determination*").

### C.    Commerce's Final Scope Determination in the AD/CVD Investigations

Commenting on Commerce's preliminary scope determination in case briefs, two U.S. importers, Trans Texas Tire, LLC ("Trans Texas") and HiSpec Wheel & Tire, Inc. ("HiSpec"), asserted that:

> The plain meaning and the intent of {the third-country-processing} language is to include only steel wheels assembled in a third country when both the rims <u>and</u> discs originate from China; in contrast, steel wheels assembled in a third country when either the rims <u>or</u> discs do not originate from China would <u>not</u> be within scope (*i.e.*, the Chinese rim or disc would no longer be considered scope merchandise).

AMERICAS 125457403

*Asia Wheel Scope Ruling Request* at Exhibit 3 (excerpts from Trans Texas's and HiSpec's case briefs), Appx80051, Appx80055.  Trans Texas and HiSpec also noted, however, that "the plain meaning of this scope and the scope's clear intent . . . potentially may be undermined by the phrase 'including but not limited to' in the *Preliminary AD Determination* scope." *Id.* (emphases in original), Appx80052, Appx80056.  To address this concern, both importers asked Commerce to confirm in the final determination "that wheels comprised of <u>rims or discs</u> from China that are assembled in a third country with <u>rims or discs</u> from third countries are not within scope." *Id.*, Appx80052, Appx80056.  They reasoned that "{c}larifying the scope language to make this clear – ideally written into the scope itself, beyond clarification in the Issues and Decision Memorandum – would inform the importing community as well as {CBP}, to avoid any confusion upon entry." *Id.*, Appx80052, Appx80056.  In its rebuttal brief, Zhejiang Jingu "agree{d} with {Trans Texas} and Hi-Spec that the amended scope language only covers third country processing if both the 'rims **and** discs' are from China." *Id.* at Exhibit 3 (excerpt from Zhejiang Jingu's rebuttal brief) (emphasis in original), Appx80045.

In response, Commerce concluded that such clarifying language was unnecessary, stating at the beginning of its final scope determination that "the existing language sufficiently conveys the concept that third-country processing of a steel wheel ***<u>must be of rims <u>and</u> discs produced in China</u>***" for the imported merchandise to be within scope." *Asia Wheel Scope Ruling Request* at Exhibit 1 (Commerce Memorandum, RE: Final Scope Decision Memorandum (A-570-090, C-570-091) (July 1, 2019)) at 22-23 ("*Final INV Scope Memo*") (emphasis added), Appx80020-80021.  Commerce reiterated this position at the conclusion of its analysis, stating:

> Furthermore, as we find that the existing language sufficiently conveys the concept that third-country processing of a steel wheel ***<u>must be of rims <u>and</u> discs produced in China</u>*** and agree, generally, with the respondent/importer's understanding of this language, we do not find it necessary to adopt further

clarification language proposed in the respondent/importer's affirmative scope comments.

*Id.* at 24 (emphasis added), Appx80022.

Commerce also rejected Dexstar's argument – advanced for the first time in its scope rebuttal brief – that the scope should be modified further to include trailer wheels assembled in a third country from rims "*or*" discs from China.  Commerce explained:

> The Petitioner now contends . . . that either a rim *or* a disc from China would be covered by these investigations, not only a rim and a disc together.  However, no such intent is obvious on the record.  Indeed, the entirety of the petitioner's initial request for the relevant clarification plainly discussed the processing involved in assembly and/or coating/painting/galvanizing of the finished wheel from all necessary constituent parts (*i.e.*, both the rim and disc).  Thus, Commerce understood this clarification to address exactly the circumstance that was explicitly presented, the assembly (and surface finishing) of steel wheels in a third country from all constituent parts produced in China, and no such consideration of individual constituent parts was implicit in the clarification but, rather, was presented for the first time in the rebuttal stage of this proceeding where the petitioner argues for a modification of the scope that uses the word "or" instead of "and."

*Final INV Scope Memo* at 23-24 (emphasis added), Appx80021-80022.

Commerce issued the *AD/CVD Orders* on September 3, 2019, using the *Preliminary AD Determination* scope language, and setting a combined AD/CVD cash deposit rate in excess of 400%.  84 Fed. Reg. at 45953-54.

## II.    INITIATION OF ENFORCE AND PROTECT ACT INVESTIGATION

Dexstar filed an allegation with CBP on March 19, 2020, pursuant to the Enforce and Protect Act of 2015, Pub. L. 114-125, 130 Stat. 122, 155, Feb. 24, 2016 ("EAPA"), and CBP initiated an EAPA investigation (EAPA Case No. 7549) on July 15, 2020.  *See* Letter from Schagrin Associates to Commerce (Dec. 8, 2020) ("Dexstar Opposition") at Exhibit 2 (CBP, Notice of Initiation of Investigation and Interim Measures (July 15, 2020) ("*CBP Initiation*")), Appx80111.  Dexstar alleged that the Importers were evading the *AD/CVD Orders* because their

AMERICAS 125457403

imported wheels "were reportedly from the Chinese wheel producer, Jingu . . . and **transshipped through Asia Wheel** . . . , Jingu's affiliate in Thailand." *Id*. at 2-3 (emphasis added), Appx80112-80113.  Dexstar did not allege that the Importers evaded the *AD/CVD Orders* by importing wheels produced in Thailand with only one Chinese-origin wheel component; nor did CBP initiate its EAPA investigation on that basis.  *See id*. at 1-9, Appx80111-80119.  As "interim measures," CBP suspended liquidation of the Importers' imports of trailer wheels from Asia Wheel with entry dates from April 9, 2020, and extended the liquidation period for each unliquidated entry that entered before that date – retroactively subjecting their imports to AD and CVD liability in excess of 400% of the value of the imported merchandise.  *Id*. at 8, Appx80118; *AD/CVD Orders*, 84 Fed. Reg. at 45954.

The Importers and Asia Wheel first received notice of the EAPA investigation in July 2020, and each fully cooperated with CBP in the investigation.  *See CBP Initiation* at 1-6, Appx80111-80116; Dexstar Opposition at Exhibit 3 (TRAILSTAR's Response to CBP's Request for Information (Sept. 18, 2020) ("TRAILSTAR EAPA Response")), Appx80130-80138.  The Importers emphasized their reliance on Commerce's *Final INV Scope Memo*, efforts to achieve compliance therewith, and/or resource constraints:

- TexTrail, before placing purchase orders, had one of its engineers conduct a site inspection of Asia Wheel in April 2019, and commissioned an industry expert to do so in December 2019.  *See* Importers' Response to Request for Information (Aug. 30, 2021) at 1-9 ("*Importers' RFI*"), Appx80435-80443. These inspections were well-documented with photographs and findings from the expert confirming production in Thailand.  *See id*. at 8-9, Exhibits 2-3, Appx80442-80443, Appx80480-80509.

- Lionshead, likewise, had its owner and an employee conduct and document a site inspection of Asia Wheel in May 2019. *See id*. at 8-9, Exhibit 4, Appx80442-80443, Appx80510-80514.

- "TRAILSTAR is essentially a one-man company run by its Owner/ Founder/ CEO, Les Arnold. . . . Mr. Arnold founded TRAILSTAR in November 1995. He has since that time virtually single-handedly run the business by personally undertaking purchasing, selling, accounting, and marketing activities. . . . {I}t very much remains a one-man enterprise." TRAILSTAR EAPA Response at 2, Appx80132.

On December 17, 2020, CBP issued a "covered merchandise referral" to Commerce under 19 U.S.C. § 1517(b)(4), because CBP was unable to determine whether the trailer wheels at issue in EAPA Case No. 7459 – "steel trailer wheels produced in Thailand from inputs sourced from China (*i.e.,* either the rim or disc component is sourced from China and the corresponding rim or disc component is produced in Thailand, which may or may not involve using inputs sourced from China)" – were "covered merchandise" (*i.e.*, subject to the *AD/CVD Orders*). Letter from CBP to Commerce (Dec. 17, 2020) ("*CBP Referral*"), Appx1386-1388; *Certain Steel Wheels 12 to 16.5 Inches in Diameter from the People's Republic of China*, 86 Fed. Reg. 10245, 10246 (Dep't Commerce Feb. 19, 2021) ("*Referral Notice*"), Appx1397-1398.

## III.  COMMERCE'S SCOPE INQUIRY ADDRESSING TRAILER WHEELS MANUFACTURED BY ASIA WHEEL IN THAILAND

On November 10, 2020, before CBP issued its covered merchandise referral, Asia Wheel requested that Commerce issue a scope ruling to confirm that certain trailer wheels Asia Wheel produced in Thailand were not covered by the scope of the *AD/CVD Orders*. *See Asia Wheel Scope Ruling Request*, Appx80000. Specifically, Asia Wheel asked Commerce to confirm that

trailer wheels Asia Wheel produced in Thailand using the three production methods described below are not covered by the scope of the *AD/CVD Orders*.

- **Production Method A:** Asia Wheel produces rims in Thailand from rectangular steel plates sourced from China or a third country; welds the Thailand-produced rims to discs sourced from China to assemble trailer wheels; and paints the wheels per the customer's specification ("Method A Wheels"). To convert the steel plate into a rim, Asia Wheel coils the rectangular steel plate to form a circle; welds the open butts of the steel ring into a closed steel ring; polishes the welded steel ring to remove slag from the surface; expands the outer sides of the polished steel ring for precise positioning during the subsequent rolling phase; rolls the steel rings in three stages, gradually forming the surface of the steel ring into the precise shape of the rim; adjusts the unfinished rim to the precise shape required for insertion of the disc; and punches a valve hole in the surface of the rim. Each step uses specific machinery. *See Asia Wheel Scope Ruling Request* at Exhibit 4, Appx80060-80061. The images below show the input rectangular steel plate compared to the output rim (*see id.* at Exhibit 4, Appx80062):




**Materials Imported into Thailand:**
**Rectangular Steel Plate**


(Rim)



AMERICAS 125457403

- **Production Method B:**  Asia Wheel produces rims in Thailand from rectangular steel plates sourced from China or a third country.  Asia Wheel also produces discs in Thailand from circular steel plates sourced from China.  Asia Wheel then welds the Thailand-produced rims and Thailand-produced discs to assemble trailer wheels, and paints the wheels per the customer's specification ("Method B Wheels").  *See Asia Wheel Scope Ruling Request* at Exhibit 5, Appx80066-80068.

- **Production Method C:**  Asia Wheel produces non-standard trailer wheels called "dual wheels" in Thailand.  For dual wheels, Asia Wheel produces discs in Thailand from disc blanks sourced from China.  Asia Wheel then welds the Thailand-produced discs to rims from China to assemble dual wheels, and paints the wheels per the customer's specification ("Method C Wheels").  *See Asia Wheel Scope Ruling Request* at Exhibit 6, Appx80074-80075.

None of the production methods uses ***both*** rims ***and*** discs from China.

Asia Wheel did not request a scope ruling from Commerce because it thought any of these trailer wheels were potentially covered by the scope of the *AD/CVD Orders*.  Rather, Asia Wheel requested a scope ruling because it needed Commerce to confirm that the products were outside the scope for CBP, since CBP had initiated EAPA Case. No. 7459 concerning the same wheels imported from Thailand.

In response to Asia Wheel's request, Commerce initiated a scope inquiry on March 22, 2021.  *See* Commerce Letter to Interested Parties, RE: Initiation of Asia Wheel Scope Inquiry (A-570-090, C-570-091) (Mar. 22, 2021), Appx1410.  During the inquiry, Commerce issued supplemental questionnaires to which Asia Wheel responded.  Commerce also stated that it would "address the covered merchandise referral and Asia Wheel Co., Ltd.'s scope ruling

request in the ongoing scope segments of the AD and CVD proceedings{,}" and, "{b}ased on {its} determinations in the ongoing scope segments of the AD and CVD proceedings, {would} notify CBP as to whether the merchandise subject to the referral is covered merchandise within the meaning of section 517(a)(3) of the Act." *Referral Notice*, 86 Fed. Reg. at 10246, Appx1398.

###    A.    Commerce's Preliminary Scope Ruling

On August 25, 2022, Commerce issued the preliminary scope ruling. *See* Commerce Memorandum, RE: Preliminary Scope Ruling: Asia Wheel's Steel Wheels Processed in Thailand (A-570-090, C-570-091) (Aug. 25, 2022) ("*Prelim. Scope Ruling*"), Appx2442. Commerce found that Method A Wheels and Method C Wheels are subject to the scope of the *AD/CVD Orders*, and that Method B Wheels are outside the scope of the *AD/CVD Orders*. *See id.* at 24, Appx2465.

Commerce denied that it had determined in the original AD/CVD investigations that only trailer wheels produced in a third country with ***both*** rims ***and*** discs from China are covered by the scope of the *AD/CVD Orders*. *See Prelim. Scope Ruling* at 13, Appx2454. At the same time, however, Commerce found that the *AD/CVD Orders* did not clearly include trailer wheels produced in a third country with only one component (rim or disc) originating from China. Consequently, Commerce conducted a "substantial transformation" analysis to determine whether Thailand or China is the country of origin of the Method A and Method C Wheels imported into the United States for AD/CVD purposes. Commerce preliminarily determined that the Chinese-origin components were not substantially transformed in Thailand, such that China was the country of origin of the imported Method A Wheels and Method C Wheels. *See Prelim. Scope Ruling* at 21, Appx2462.

AMERICAS 125457403

### B.    Asia Wheel's and the Importers' Briefing

On October 5, 2022, Asia Wheel filed a case brief in the scope proceeding.  *See* Asia Wheel Case Brief (A-570-090, C-570-091) (Oct. 5, 2022) ("*Asia Wheel Case Br.*"); Appx81553. ***First***, Asia Wheel argued that the plain language of the scope of the *AD/CVD Orders*, as interpreted by Commerce during the original AD/CVD investigations, does not include trailer wheels made in a third country using rims ***or*** discs from China.  Appx81565-81569.  ***Second***, with respect to substantial transformation, Asia Wheel argued that Commerce's preliminary analysis was fundamentally flawed, because Commerce focused its analysis on the Chinese-origin component (such as a disc for Method A Wheels), and overlooked the finished product imported into the United States.  Appx81570-81589.  ***Third***, Asia Wheel argued that, in the event of an affirmative final scope ruling, Commerce should direct CBP to commence suspension of liquidation no earlier than the date of the preliminary scope ruling (August 25, 2022), and not continue any prior suspension imposed by CBP, because importers lacked adequate notice that Method A Wheels and Method C Wheels are covered by the scope of the *AD/CVD Orders* until that date.  Appx81589-81593.  ***Finally***, also in the event of an affirmative scope ruling, Asia Wheel argued that only the Chinese-origin component (*i.e.*, the discs in Method A Wheels and the rims in Method C Wheels) should be subject to AD/CVD liability.  Appx81594-81595.

The Importers also submitted a case brief making the same or similar arguments.  *See* Importers' Case Brief (A-570-090, C-570-091) (Sept. 21, 2022), Appx2514.  Asia Wheel and the Importers also presented their arguments to Commerce at a hearing conducted in February 2023. *See* Commerce Hearing Transcript (Feb. 6, 2023) at 12-36, Appx2713-2737.

### C.    Commerce's Final Scope Ruling

On April 11, 2023, more than two years after it had initiated the scope inquiry and having given itself ***fourteen*** extensions of the deadline, *see* Commerce Memorandum (Feb. 27, 2023),

15

Appx2778, Commerce issued the *Final Scope Ruling*. Commerce continued to find that Method A Wheels and Method C Wheels are subject to the scope of the *AD/CVD Orders*, and that Method B Wheels are outside the scope of the *AD/CVD Orders*. *See Final Scope Ruling* at 54, Appx2835.

Commerce found that it was appropriate to apply a substantial transformation analysis to determine the country of origin of Method A Wheels and Method C Wheels because "the plain language of the scope is ambiguous" as to whether such wheels – where only one of the two components was from China – are subject to the scope of the *AD/CVD Orders*. *Final Scope Ruling* at 14, Appx2795.

Commerce also continued to find that the Chinese-origin components did not undergo substantial transformation in Thailand, such that China was the country of origin for the imported Method A Wheels and Method C Wheels. *See Final Scope Ruling* at 26, 35-36, Appx2807, Appx2816-2817. In doing so, Commerce stated that it was "not altering {its} assessment of any individual factor" discussed in the preliminary scope ruling. *Id.* at 26, Appx2807.

Moreover, Commerce stated that it "intend{ed} to instruct CBP to continue the suspension of liquidation for products found to be covered by the scope of the *Orders* if already suspended, and if liquidation of entries of such products is not already suspended, {it} intend{ed} to instruct CBP to suspend liquidation of entries of products found to be covered by the scope of the *Orders* effective to the date we initiated upon Asia Wheel's scope request." *Final Scope Ruling* at 40 (emphasis added), Appx2821. Commerce also rejected the argument that only the Chinese-origin component (rim or disc) should be subject to AD/CVD liability. *See Final Scope Ruling* at 47-48, Appx2828-2829.

AMERICAS 125457403

## IV.    CBP'S EAPA DETERMINATION

In August 2023, after Commerce issued the *Final Scope Ruling*, CBP issued an affirmative duty evasion determination, for which the Importers have requested administrative review per 19 C.F.R. § 165.41.  *See* CBP, Notice of Determination as to Evasion (Aug. 7, 2023), available at: https://www.cbp.gov/document/publications/eapa-cons-investigation-7459-lionshead-specialty-tire-and-wheel-llc-tex-trail.

### STANDARD OF REVIEW

The Court "shall hold unlawful" a Commerce final scope determination if it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i); *see also Micron Tech. Inc. v. United States*, 117 F.3d 1386, 1393 (Fed. Cir. 1997).

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *DuPont Teijin Films USA v. United States*, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  In determining whether Commerce's conclusions are based on substantial evidence, the Court must consider "the record as a whole, including {evidence} which fairly detracts from {the} weight" of Commerce's conclusions.  *Target Corp. v. United States*, 609 F.3d 1352, 1358 (Fed. Cir. 2010) (internal quotation marks and citation omitted).  Moreover, a determination based on inadequate reasoning cannot survive the "substantial evidence" standard of review.  *See Chr. Bjelland Seafoods A/S v. United States*, 19 C.I.T. 35, 37 (1995) (citing *USX Corp. v. United States*, 655 F. Supp. 487, 489 (Ct. Int'l Trade 1987)).

As concerns judicial review of Commerce scope rulings, "the question of whether the unambiguous terms of a scope control the inquiry, or whether some ambiguity exists, is a question of law that {the court} review{s} de novo."  *Meridian Prods., LLC v. United States*,

851 F.3d 1375, 1381 (Fed. Cir. 2017) (citing *Allegheny Bradford. Corp. v. United States*, 342 F. Supp. 2d 1172, 1183 (Ct. Int'l Trade 2004)).  Further, "a scope determination is not in accordance with law if it changes the scope of an order or interprets an order in a manner contrary to the order's terms."  *Allegheny Bradford*, 342 F. Supp. 2d at 1183 (citing *Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1094-95 (Fed. Cir. 2002)).

## ARGUMENT

### I.    COMMERCE'S INTERPRETATION OF THE SCOPE IS UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND NOT IN ACCORDANCE WITH LAW

"Scope orders may be interpreted as including {specific} merchandise only if they contain language that specifically includes {that} merchandise or may be reasonably interpreted to include it."  *Duferco Steel, Inc. v. United States*, 296 F.3d 1087, 1089 (Fed. Cir. 2002).  Here, the plain language of the scope of the *AD/CVD Orders* neither specifically includes nor may reasonably be interpreted to include steel wheels manufactured in third countries using rims *or* discs from China – but not both.  Rather, the plain language indicates that *both* the rims *and* the discs must originate from China for a wheel assembled in a third country to fall within the scope. Despite confirming this interpretation during the original AD/CVD investigations, Commerce unreasonably backtracked in the *Final Scope Ruling*, now claiming that the scope is ambiguous with respect to whether such wheels manufactured in third countries are outside the scope of the *AD/CVD Orders*.  Commerce's interpretation of the scope language in the *Final Scope Ruling* is impermissible and also unsupported by substantial evidence.

AMERICAS 125457403

A.     **The Plain Language of the Scope Does Not Include Trailer Wheels Manufactured in a Third Country If Only One of Two Wheel Components Is of Chinese-Origin**

Commerce determines whether a product is covered by the scope of an order in accordance with 19 C.F.R. § 351.225(k).[3]  The starting point for Commerce's analysis is the scope language itself.  *See Meridian Prods.*, 851 F.3d at 1381 ("Commerce's inquiry must begin with the order's scope to determine whether it contains an ambiguity and, thus, is susceptible to interpretation."); *see also Duferco*, 296 F.3d at 1097 ("{A} predicate for the interpretive process is language in the order that is subject to interpretation.").  "If the scope is unambiguous, it governs."  *Meridian*, 851 F.3d at 1381.  Interpretation of the plain language of the scope is a legal question that the court reviews *de novo*.  *See id.* at 1382.  Here, the plain language of the scope does not include wheels manufactured in third countries where only one of two wheel components originates from China.

The *AD/CVD Orders* state: "The scope includes rims, discs, and wheels that have been further processed in a third country, including, but not limited to, . . . the welding and painting of rims ***and*** discs ***from China*** to form a steel wheel . . . ."  84 Fed. Reg. 45952, 45954 (emphasis added).  On its face, the plain language of the scope indicates that, if a wheel is assembled in a third country, the wheel is subject to the *AD/CVD Orders* only if both the rims "and" discs are from China.  "'And does not mean 'or.'"  *Adams v. U.S. Forest Serv.*, 671 F.3d 1138, 1145 (9th Cir. 2012).  "As a linguistic matter, 'and' and 'or' are not synonyms; indeed, they are more

---

[3] As recognized by Commerce in the scope proceeding, "{a}though Commerce published revisions to its scope regulations in September 2021, the new scope regulations only became effective on November 4, 2021."  *Final Scope Ruling* at 2 n.4, Appx2783 (citing *Regulations to Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52300 (Dep't Commerce Sept. 20, 2021)).  Consequently, "because Asia Wheel filed its scope ruling request on November 11, 2020, before the effective date of the new regulations," the pre-amendment version of 19 C.F.R. § 351.225 applies to Commerce's *Final Scope Ruling*. *Id.*

AMERICAS 125457403

nearly antonyms. One need only start the day with a breakfast of ham *or* eggs to be duly impressed by the difference." *MacDonald v. Pan Am. World Airways, Inc.*, 859 F.2d 742, 746 (9th Cir. 1988) (Kozinski, J., dissenting) (emphasis in original).

"Commerce cannot 'interpret' an antidumping order so as to change the scope of that order, nor can Commerce interpret an order in a manner contrary to its terms." *Eckstrom Indus., Inc. v. United States*, 254 F.3d 1068, 1072 (Fed. Cir. 2001). Here, the third-country-processing provision of the *AD/CVD Orders'* scope cannot reasonably be interpreted to include wheels made in third countries from rims *or* discs from China, because the scope states "rims ***and*** discs from China" – not "rims *or* discs from China." Consequently, as a matter of law, such wheels manufactured in third countries are outside the scope of the *AD/CVD Orders*, and it was impermissible for Commerce to conclude otherwise. *See Allegheny Bradford*, 342 F. Supp. 2d at 1183 ("[A] scope determination is not in accordance with law if it changes the scope of an order or interprets an order in a manner contrary to the order's terms.") (citing *Duferco*, 296 F.3d at 1094-95).

## B. Commerce's Interpretation of the Scope Based on the § 351.225(k)(1) Primary Interpretive Sources Is Unsupported by Substantial Evidence

Although the scope language is paramount, Commerce will also consider primary interpretive sources, namely, the "descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of {Commerce} (including prior scope determinations) and the Commission." 19 C.F.R. § 351.225(k)(1); *see also Meridian*, 851 F.3d at 1382; *Duferco*, 296 F.3d at 1097 ("Scope orders are 'interpreted with the aid of the antidumping petition, the factual findings and legal conclusions adduced from the administrative investigations, and the preliminary order.'"), quoting *Smith Corona Corp. v. United States*, 915 F.2d 683, 685 (Fed. Cir. 1990). "Commerce's analysis of these sources against the product in

AMERICAS 125457403

question produces factual findings reviewed for substantial evidence." *Meridian*, 851 F.3d at 1382. Here, contrary to an unequivocal record, Commerce unreasonably denied having confirmed in the original investigations that wheels manufactured in third countries with only one wheel component (rims or discs) originating in China are outside the scope.

      **1.**      **Commerce determined in the AD/CVD investigations that wheels made in third countries with rims <u>or</u> discs from China (but not both) are outside the scope**

Commerce's scope determination in the original investigations – consideration of which is required under 19 C.F.R. § 351.225(k)(1) – reinforces the conclusion that both the rims and discs of the wheels must originate in China for steel wheels assembled in third countries to fall within the scope of the *AD/CVD Orders*.

In its preliminary scope determination issued during the AD/CVD investigations, Commerce amended Petitioner's proposed third-country-processing provision to clarify "that rims and discs ***from China*** that have been further processed in a third country into finished steel wheels be included within scope" – adding the qualifier "from China." *Prelim. INV Scope Memo* at 10-11 (emphasis added), Appx80035-80036. Commerce added the "from China" requirement in response to comments from Zhejiang Jingu and Tredit, an importer, both of which had argued that Dexstar's proposed third-country-processing provision should be amended "to require that the rim and disc both be of Chinese origin." *Id.* at 7-8, Appx80032-80033.

Subsequently, two other importers, Trans Texas and HiSpec, argued in case briefs that Commerce's amendment to the third-country-processing provision did not go far enough. In their view, although "{t}he plain meaning and the intent of {the third-country-processing} language is to include only steel wheels assembled in a third country when both the rims <u>and</u> discs originate from China{,}" the "plain meaning of this scope . . . potentially may be undermined by the phrase 'including but not limited to' in the *Preliminary AD Determination*

scope." *Asia Wheel Scope Ruling Request* at Exhibit 3, Appx80051-80052, Appx80055-80056. Consequently, both importers asked Commerce to confirm in the final determination – "ideally written into the scope itself" – "that wheels comprised of <u>rims or discs</u> from China that are assembled in a third country with <u>rims or discs</u> from third countries are not within scope." *Id.*, Appx80052, Appx80056. In a rebuttal brief, Zhejiang Jingu "agree{d} with {Trans Texas} and Hi-Spec that the amended scope language only covers third country processing if both the 'rims **and** discs' are from China." *Id.*, Appx80045.

Commerce's response in the final scope determination was unequivocal. Commerce declined to amend the scope language further to incorporate Trans Texas's and HiSpec's request because "the existing language sufficiently conveys the concept that third-country processing of a steel wheel ***must be of rims <u>and</u> discs produced in China***" for the imported wheel to be within scope. *Final INV Scope Memo* at 22-23 (emphasis added), Appx80020-80021. Commerce reiterated this position at the conclusion of its analysis, stating:

> Furthermore, as we find that the existing language sufficiently conveys the concept that third-country processing of a steel wheel ***must be of rims <u>and</u> discs produced in China*** and agree, generally, with the respondent/importer's understanding of this language, we do not find it necessary to adopt further clarification language proposed in the respondent/importer's affirmative scope comments.

*Id.* at 24 (emphasis added), Appx80022. If it were unnecessary for both the rims ***and*** discs of trailer wheels manufactured in third countries to originate from China, Commerce would not have used the word "must" – but it did. The final scope language adopted by Commerce thus requires that both the rims and the discs "must" originate from China for third-country-assembled wheels to be within scope.

For these reasons, Commerce's scope determination in the AD/CVD investigations leads to the unavoidable conclusion that the agency interpreted the third-country-processing provision

to mean that trailer wheels manufactured in a third country with rims *or* discs from China – but not both – are outside the scope of the *AD/CVD Orders*. Any conclusion otherwise is unsupported by substantial evidence.

### 2. Commerce recharacterized its scope analysis from the AD/CVD investigations

Despite its interpretation of the third-country-processing provision in the original investigations, Commerce concluded in the contested *Final Scope Ruling* that the scope of the *AD/CVD Orders* is "ambiguous" as to coverage of finished wheels manufactured in a third country using rims or discs (but not both) from China. *See Final Scope Ruling* at 14, Appx2795. In doing so, Commerce offered three main justifications for its newfound position – none of which is supported by substantial evidence.

First, Commerce claimed to have rejected the interpretation advanced by importers Trans Texas and HiSpec that the third-country-processing provision includes only wheels made in third countries from rims *and* discs from China. *See Final Scope Ruling* at 14 ("we declined to clarify the scope language as requested by the respondent and certain importers"), 15 ("we were rejecting *all* parties' attempts to clarify this question {(*i.e.*, rims *or* discs from China)} *generally*") (emphasis added), Appx2795, Appx2796. Commerce's claim, however, is impossible to reconcile with its handling of the third-country-processing provision during the original AD/CVD investigations, as recounted above. In particular, importers Trans Texas and HiSpec specifically asked Commerce to confirm "that wheels comprised of <u>rims or discs</u> from China that are assembled in a third country with <u>rims or discs</u> from third countries are not within scope{,}" and recommended that Commerce amend the scope language to make this even clearer, if necessary. *Asia Wheel Scope Ruling Request* at Exhibit 3, Appx80052, Appx80056. In response, Commerce expressed agreement with Trans Texas's and HiSpec's understanding of

the third-country-processing provision, and concluded it was unnecessary to "adopt further clarification language" because "the existing language sufficiently conveys the concept that third-country processing of a steel wheel ***must be of rims <u>and</u> discs produced in China*** . . . ." *Final INV Scope Memo* at 24 (emphasis added), Appx80022. In other words, Commerce declined to amend the scope as requested by the importers because it agreed that steel wheels assembled in third countries fall within scope ***only if*** both the rims ***and*** discs originate from China. Commerce's contrary claim in the *Final Scope Ruling* is unreasonable and, thus, unsupported by substantial evidence.

Second, Commerce asserted that the "including, but not limited to" language of the third-country-processing provision means that wheels made in third countries from rims or discs from China were not necessarily excluded from the scope. *See Final Scope Ruling* at 15, Appx2796 (citing *Prelim. Scope Ruling* at 13 ("The 'including, but not limited to' clause indicates that the 'painting of wheels from China and the welding and painting of rims and discs from China to form a steel wheel' are non-exhaustive examples of included processing . . . ."), Appx2454). While the "including, but not limited to" phrase indicates the scope may include scenarios of third-country processing of Chinese-origin rims, discs, and wheels beyond those provided as examples in the scope language, Commerce addressed the question of wheels made in third countries from rims ***or*** discs from China in the AD/CVD investigations. Specifically, Commerce approved a third-country-processing provision indicating that the scope includes wheels manufactured in third countries using "rims ***and*** discs from China." *AD/CVD Orders*, 84 Fed. Reg. at 45954 (emphasis added). If the scope could extend to wheels manufactured in third countries using rims ***or*** discs from China, Commerce would have used the phrase "rims or discs from China" instead of "rims and discs from China." Commerce not only declined to do so, but

also rejected Dexstar's request to substitute "or" for "and" – finding that use of "or" would be "intentionally and selectively expansionary and not consistent with the plain meaning of the word 'and.'" *Final INV Scope Memo* at 24, Appx80022.

Furthermore, as discussed, in case briefs submitted to Commerce during the AD/CVD investigations, Trans Texas and HiSpec warned that, absent clarification from Commerce, the "including, but not limited to" phrase could potentially undermine the plain meaning of the third-country-processing provision – that "steel wheels assembled in a third country when either the rims <u>or</u> discs do not originate from China" are outside the scope. *Asia Wheel Scope Ruling Request* at Exhibit 3, Appx80052, Appx80056. In response, Commerce concluded that another amendment to the third-country-processing provision was unnecessary, because "the existing language sufficiently conveys the concept that third-country processing of a steel wheel ***must be of rims <u>and</u> discs produced in China***" for the imported wheels to be within scope. *Final INV Scope Memo* at 24 (emphasis added), Appx80022. In light of its prior scope determination in the original AD/CVD investigations, Commerce's conclusion in the *Final Scope Ruling* that the "including, but not limited to" phrase could be interpreted to cover steel wheels assembled in third countries with rims *or* discs from China is unreasonable and unsupported by substantial evidence.

Third, Commerce also contended that in the underlying AD/CVD investigations it deferred the question of whether the scope covers wheels made in third countries from rims *or* discs (but not both) from China for resolution in a future scope or circumvention inquiry. *See Final Scope Ruling* at 14-15, Appx2795-2796. According to Commerce, in the original AD/CVD investigations:

> {Commerce} anticipated additional analysis where one component was sourced in a third country, stating "Commerce does not foreclose a further analysis of

substantial transformation should a product be completed in a third country from a mix of rim and disc parts from China and a third country, if an interested party requests a scope ruling and/or to address a future circumvention concern."

*Preliminary Scope Ruling* at 14, Appx2455 (citing *Final INV Scope Memo* at 24, Appx80022).

Commerce, however, relied on this sentence in isolation.  Whatever Commerce meant by "a mix of rim and disc **parts** from China and a third country," it did **not** mean that wheels made in third countries from rims **or** discs from China (but not both) could potentially be covered by the scope, because Commerce expressly addressed this scenario during the investigations.   Commerce confirmed this in the last sentence of the same paragraph, stating:

> {A}s we find that the existing language sufficiently conveys the concept that third-country processing of a steel wheel **_must_** be of **_rims and discs produced in China_** and agree, generally, with the respondent/importer's understanding of this language, we do not find it necessary to adopt the further clarification language proposed in the respondent/importer's affirmative scope comments.

*Final INV Scope Memo* at 24 (emphasis added), Appx80022.   Once again, Commerce's recharacterization of its scope analysis in the original AD/CVD investigations is unreasonable and unsupported by substantial evidence.

### C.    Conclusion

As reported to Commerce, Asia Wheel produces Method A and C Wheels in Thailand using only one Chinese-origin wheel component – a rim or a disc.   To produce Method A Wheels, Asia Wheel manufactures rims in Thailand from rectangular steel plates, welds the Thai-origin rims to Chinese-origin discs, and paints the assembled wheel.  *See Asia Wheel Scope Ruling Request* at 6-7 & Exhibit 4, Appx80005-80006, Appx80060-80063.  To produce Method C Wheels, Asia Wheel produces discs in Thailand from disc blanks sourced from China, welds the Thai-origin discs to Chinese-origin discs, and paints the assembled steel wheel.  *See id.* at 7 & Exhibit 6, Appx80006, Appx80074-80077.  In both cases, Asia Wheel manufactures finished trailer wheels in Thailand using rims *or* discs (but not both) from China.   Consequently,

26

consistent with the plain language of the third-country-processing provision and Commerce's interpretation of it during the original AD/CVD investigations, Asia Wheel's Method A and C Wheels are outside the scope of the *AD/CVD Orders*. Commerce's conclusion in the *Final Scope Ruling* that the scope is ambiguous on this point is not in accordance with law and unsupported by substantial evidence.

## II. COMMERCE'S "SUBSTANTIAL TRANSFORMATION" ANALYSIS IS UNLAWFUL AND UNSUPPORTED BY SUBSTANTIAL EVIDENCE

In determining that the Chinese-origin wheel components (rims for Method A Wheels) were not substantially transformed in Thailand, Commerce failed to apply the proper legal standard or reach a conclusion supported by substantial evidence. Contrary to binding case law, Commerce ducked the fundamental question of whether Asia Wheel's processing in Thailand resulted in a product with a new name, character, and use. Commerce also unreasonably concluded – contrary to undisputed evidence that a finished wheel requires both a rim and a disc to exhibit its essential characteristics and achieve its function – that a Chinese-origin disc alone already exhibits the essential characteristics of a finished wheel (*i.e.*, the Method A Wheel).[4] For these reasons, Commerce's determination that Asia Wheel's manufacturing operations in Thailand failed to yield a substantial transformation is not in accordance with law and unsupported by substantial evidence.

Commerce conducts a "substantial transformation" analysis "to determine country of origin for an imported article." *Bell Supply Co., LLC v. United States*, 888 F.3d 1222, 1228 (Fed. Cir. 2018) (citing *E.I. DuPont de Nemours & Co. v. United States*, 8 F. Supp. 2d 854, 859

---

[4] Due to low U.S. shipment volumes and in the interest of judicial economy, Asia Wheel and the Importers are not pursuing the claim that Commerce's "substantial transformation" determination with respect to Method C Wheels (*i.e.*, wheels manufactured in Thailand by Asia Wheel with disc blanks and rims from China) was unsupported by substantial evidence and otherwise not in accordance with law.

(Ct. Int'l Trade 1998)).  The Federal Circuit has held that "{a} substantial transformation occurs where, 'as a result of manufacturing or processing steps . . . [,] the [product] loses its identity and is transformed into a new product having a new, name, character and use.'"  *Id.* (quoting *Bestfoods v. United States*, 165 F.3d 1371, 1373 (Fed. Cir. 1999)).  In determining whether substantial transformation occurred, Commerce's practice is to consider factors such as "(1) the class or kind of merchandise; (2) the nature and sophistication of processing in the country of exportation; (3) the product properties, essential component of the merchandise, and intended end-use; (4) the cost of production/ value added; and (5) level of investment." *Id.* at 1228-29.

Here, in finding the absence of a substantial transformation, Commerce ignored the fundamental question of whether the Chinese-origin wheel component (a disc for Method A Wheels) became "a new product having a new name, character and use" in Thailand.  *Bell Supply*, 888 F.3d at 1228 (quoting *Bestfoods*, 165 F.3d at 1373).  Commerce conceded as much in its final determination, stating:

> Whereas Commerce **may** consider whether the third-country processing imparted 'a new name, character, and use' in consideration of the totality of circumstances, any such finding may not supplant an analysis of the record otherwise with respect to the substantial transformation factors and evidence which suggests the further processing did not substantially transform the merchandise, regardless of whether a new name, character, and use was obtained as a result of such processing.

*Final Scope Ruling* at 27-28 (emphasis added), Appx2808-2809.  Commerce had it backwards. As recognized by the Federal Circuit in *Bell Supply*, the purpose of the substantial transformation factors is to inform whether, through manufacturing or processing, an article lost its identity and became a new product with a new name, character, and use.  *See Bell Supply*, 888 F.3d at 1228; *see also E.I. DuPont*, 8 F. Supp. 2d at 857 ("Substantial transformation generally refers to a degree of processing or manufacturing resulting in a new and different article.").

AMERICAS 125457403

In fact, Commerce itself referred to "name, character, and use" as the principal test under the substantial transformation analysis in the "Legal Framework" section of its final and preliminary scope rulings, stating:  (1) "Commerce's substantial transformation analysis asks . . . whether, as a result of the manufacturing or processing, the product loses its identity and is transformed into a new product having a new name, character, and use" and (2) that "Commerce *may* examine a number of factors in conducting its substantial transformation analysis" (*e.g.*, class or kind of merchandise; essential component and intended end-use; nature/sophistication of processing).  *Final Scope Ruling* at 7-8 (citing *Bell Supply*, 888 F.3d at 1228-29) (emphasis added),  Appx2788-2789;  *Preliminary Scope Ruling* at 7-8 (same), Appx2448-2449. Commerce's failure to apply the legal standard it articulated highlights the arbitrary nature of its substantial transformation analysis.  *See*, *e.g.*, *NMB Sing. Ltd. v. United States*, 557 F.3d 1316, 1328 (Fed. Cir. 2009) (remanding to Commerce and explaining that "{o}nce Commerce establishes a course of action, . . . Commerce is obliged to follow it until Commerce provides a sufficient, reasoned analysis explaining why a change is necessary"); *Katunich v. Donovan*, 599 F. Supp. 985, 986 (Ct. Int'l Trade 1984) ("It is a sound principle of administrative law that an administrative agency must either follow or adhere to existing policies and precedents or explain its noncompliance or deviation.").

Nowhere in either its final or preliminary scope ruling did Commerce answer the central question of whether the Chinese-origin discs used by Asia Wheel became a new product (finished Method A Wheels) in Thailand.  *See Final Scope Ruling* at 26-36, Appx2807-2817; *Preliminary Scope Ruling* at 17-21, Appx2458-2462.  Instead, Commerce conducted a detailed analysis of the substantial transformation factors that was divorced from the fundamental question and, consequently, meaningless.  Ultimately, Commerce concluded "that the country of

AMERICAS 125457403

origin of such inputs" – *i.e.*, the Chinese-origin discs used for Method A Wheels – "is China, and, thus, remain subject to the *Orders* after processing in Thailand." *Final Scope Ruling* at 36, Appx2817.[5]  The question is not, however, the country of origin of the Chinese-origin wheel components.  Rather, the question is the country of origin of the finished trailer wheels imported into the United States.  *See Bell Supply*, 888 F.3d at 1228 ("{T}he substantial transformation analysis is used to determine country of origin for an imported article.").  Because Commerce failed to apply the governing legal standard – addressing whether the Chinese-origin discs became a new product with a new name, character, and use in Thailand – its country-of-origin determination is not in accordance with law.

Commerce's analysis of the "essential component" factor further illustrates its flawed approach.  In finding that this factor weighed against a substantial transformation in Thailand, Commerce reasoned that the Chinese-origin discs "maintain their essential characteristics (the . . . discs . . . have a sole purpose/end use as exported from China: *i.e.*, to be incorporated into a specific finished wheel) . . . ."  *Final Scope Ruling* at 35, Appx2816; *see id.* at 28 ("a given {Chinese-origin} disc . . . continues to function as the only such component after incorporation into a finished trailer wheel"), Appx2809; *Preliminary Scope Ruling* at 18 ("The essential qualities and sole purpose of {Chinese-origin} wheel parts seemingly do not change through processing in Thailand."), 20, Appx2459, Appx2461.  With respect to Method A Wheels, Commerce declined to find a substantial transformation, in part, because the Chinese-origin disc continued to have the qualities and function as such after incorporation into a finished trailer wheel.  Applying the "new name, character and use" framework, however, the fundamental question is not whether the Chinese-origin component continues to have the qualities and

---

[5] Commerce misspoke when it referred to rims as the Chinese-origin component of Method A Wheels.  *See Final Scope Ruling* at 35-36, Appx2816-2817.

function as such after processing in Thailand, but whether the essential qualities and function of the Chinese-origin disc differ from the essential qualities and function of the finished trailer wheel manufactured in Thailand and imported into the United States.  Again, because Commerce failed to apply the legal standard affirmed by the Federal Circuit in *Bell Supply*, its country-of-origin determination is not in accordance with law.

Commerce's finding with respect to the "essential component" factor is also unsupported by substantial evidence.  In declining to find a substantial transformation in Thailand, Commerce quoted the Dexstar's representation during the original AD/CVD investigations that:

> The observation that the rim or disc are not useable without being assembled into a wheel does not detract from the fact that the rim and the disc are the essential components of the wheel.  The properties of rim and disc define the properties of the wheel and its end use.  . . .  **{T}he properties and end uses of a wheel are determined by the physical properties of the rim and the disc, not by the assembly process.**

*Final Scope Ruling* at 29 (emphasis in original) (quoting Petitioner's Request for Clarification of Country of Origin Criteria (Mar. 1, 2019) at 8-9), Appx2810.  By Dexstar's own admission, a finished wheel requires both a rim and a disc to exhibit its essential characteristics and achieve its function.  Yet, from this statement, Commerce somehow nonsensically reasoned that a Chinese-origin disc fails to become a new product – a complete and functional wheel – when it is welded to a Thai-origin rim and painted in Thailand.  Because Commerce failed to draw a "rational connection between the facts found and the choice made{,}" its finding that the Chinese-origin disc is not substantially transformed in Thailand is unsupported by substantial evidence.  *Timken U.S. Corp. v. United States*, 421 F.3d 1350, 1355 (Fed. Cir. 2005) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

Because Commerce failed to apply the proper legal standard and ground its decision in substantial evidence, Commerce's determination – that third-country processing converting a

Chinese-origin disc into a finished wheel fails to effect a substantial transformation – should not be sustained.

### III. COMMERCE'S DETERMINATION THAT THE ENTIRE FINISHED WHEEL MANUFACTURED IN THAILAND IS WITHIN THE SCOPE OF THE *AD/CVD ORDERS* IS UNLAWFUL AND UNSUPPORTED BY SUBSTANTIAL EVIDENCE

"Commerce cannot 'interpret' an antidumping order so as to change the scope of that order, nor can Commerce interpret an order in a manner contrary to its terms." *Eckstrom*, 254 F.3d at 1072. An expansion of the scope is impermissible and not in accordance with law. *See*, *e.g.*, *Allegheny Bradford*, 342 F. Supp. 2d at 1183; *Mitsubishi Elec. Corp. v. United States*, 802 F. Supp. 455, 460 (Ct. Int'l Trade 1992). Here, in determining that the entire wheel imported from Thailand is covered by the scope of the *AD/CVD Orders*, Commerce impermissibly expanded the scope contrary to its terms. In addition, Commerce contradicted its substantial transformation analysis, rendering its decision unsupported by substantial evidence.[6]

The scope of the *AD/CVD Orders* "includes **rims, discs, and wheels** that have been further processed in a third country . . . ." *AD/CVD Orders*, 84 Fed. Reg. at 45954 (emphasis added). With respect to Method A Wheels, a Chinese-origin *disc* is further processed in Thailand; consequently, only the disc component could be covered by the *AD/CVD Orders*. Commerce, however, determined that the entire Method A Wheel manufactured in Thailand is subject to AD/CVD liability. *See Final Scope Ruling* at 47-48, Appx2828-2829. Commerce's determination is inconsistent with the plain language of the scope – which includes only the Chinese-origin rim, Chinese-origin disc, or Chinese-origin wheel processed in a third country – and, therefore, not in accordance with law.

---

[6] Due to low U.S. shipment volumes of Method C Wheels and in the interest of judicial economy, Asia Wheel and the Importers are pursuing this claim only with respect to Method A Wheels.

AMERICAS 125457403

Additional language makes clear that the *AD/CVD Orders* apply only to the wheel component that is subject, as opposed to covering nonsubject components as well. *See AD/CVD Orders*, 84 Fed. Reg. at 45954 ("{I}f the steel wheels or rims are imported as an assembly with a tire mounted on the wheel or rim and/or with a valve stem attached, the tire and/or valve stem is not covered by the scope.").

Commerce's determination is also inconsistent with its "substantial transformation" analysis and, therefore, unsupported by substantial evidence. With respect to Method A Wheels, for example, Commerce determined that Chinese-origin discs were not substantially transformed in Thailand. *See Final Scope Ruling* at 35-36, Appx2816-2817. If substantial transformation does not occur, however, it follows that the Chinese-origin discs (included in Method A Wheels) do not lose their identities as such after being converted into a finished wheel. Applying this same logic (*i.e.*, no substantial transformation occurred in Thailand), the rims included in Method A Wheels (produced in Thailand from steel plates) also do not lose their identities and remain products of Thailand. Under these circumstances, only the subject component of the imported wheel could reasonably be covered by the *AD/CVD Orders* and subject to AD/CVD. In concluding otherwise, Commerce failed to draw a rational connection between the facts found (*i.e.*, the Chinese-origin disc is not substantially transformed) and the choice made (*i.e.*, AD/CVD liability could extend to nonsubject components that likewise were not substantially transformed). *See Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.

In rejecting this argument below, Commerce reasoned that its "determination with respect to Production Method A . . . wheels finds that the finished wheels resulting from {this} production method{}, as exported from Thailand to the United States, are not substantially transformed by Thai processing and remain Chinese-origin wheels." *Final Scope Ruling* at 48,

AMERICAS 125457403

Appx2829. Commerce's logic is nonsensical, however, because the "substantial transformation" question necessarily begins with the upstream product (*e.g.*, a Chinese-origin disc for Method A Wheels) – not the downstream product (*i.e.*, the finished trailer wheel). A determination based on inadequate reasoning cannot survive the "substantial evidence" standard of review. *See Chr. Bjelland*, 19 C.I.T. at 37 (citing *USX Corp.*, 655 F. Supp. at 489).

## IV.   COMMERCE IMPERMISSIBLY DIRECTED CBP TO CONTINUE TO SUSPEND LIQUIDATION OF IMPORTS ENTERED BEFORE THE DATE OF INITIATION OF THE SCOPE INQUIRY

Commerce has a legal mandate to provide "fair warning" before subjecting imported merchandise to AD/CVD liability. *See Tai-Ao Aluminum (Taishan) Co. v. United States*, 983 F.3d 487, 495 (Fed. Cir. 2020) ("*Tai-Ao II*"). Here, Commerce should have acknowledged the lack of fair warning to the importers in its response to CBP's covered merchandise referral. Instead, Commerce unlawfully directed CBP "to continue" its prior suspension of liquidation under the EAPA – which was retroactive and applied to entries made before the date of initiation of Commerce's scope inquiry – in contravention of its fair warning mandate. *See* Commerce Liquidation Instruction to CBP, Message 3138405, at para. 8, Appx2904.

### A.   The Importers Did Not Receive Fair Warning That Trailer Wheels Produced in Third Countries from Chinese "Rims <u>Or</u> Discs" Were Subject To The *AD/CVD Orders* and Could Be Assessed Duties

Commerce's interpretation of the scope is unsupported by substantial evidence and not in accordance with law, as detailed above. *See supra*, Section I. In the event that the Court finds the products are nevertheless within the scope, the Importers did not receive fair warning that trailer wheels produced in third countries from Chinese "rims or discs" were subject to the *AD/CVD Orders* and could be assessed duties until Commerce initiated the scope inquiry requested by Asia Wheel. Commerce admitted that "any ambiguity that the *specific* steel wheels manufactured by Production Methods A and C may be subject to liabilities was established by

the March 22, 2021, Asia Wheel Initiation memorandum and the explicit mention of the merchandise in question therein constituted fair warning to any reasonably informed importer." *Final Scope Ruling* at 41, Appx2822. Consequently, even by Commerce's own admission, the Importers lacked fair warning that the specific wheels at issue were potentially within the scope until that date.

An "assessment of retroactive duties . . . is . . . unlawful" without "adequate notice" of potential AD/CVD applicability. *See Trans Texas Tire, LLC v. United States*, 519 F. Supp. 3d 1275, 1287-88 (Ct. Int'l Trade 2021) ("*Trans Texas I*"); *Trans Texas Tire, LLC v. United States*, 519 F. Supp. 3d 1289, 1304-05 (Ct. Int'l Trade 2021) ("*Trans Texas II*"). As the Federal Circuit explained when invalidating "retroactive" AD/CVD liability in its seminal *Tai-Ao II* decision:

> The notice requirement reflects "***the broader due-process principle*** that before an agency may enforce an order or regulation by means of a penalty or monetary sanction, it must 'provide regulated parties fair warning of the conduct {the order or regulation} prohibits or requires.'"

*Tai-Ao II*, 983 F.3d at 495 (emphasis added) (quoting *Mid Continent Nail Corp. v. United States*, 725 F.3d 1295, 1300-01 (Fed. Cir. 2013); *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 156 (2012)). "This notice requirement is designed to avoid unfairness to importers . . . ." *Id.* at 494.

In describing the scope of the *AD/CVD Orders* at the conclusion of its investigations, Commerce did not provide fair warning that trailer wheels produced in third countries from Chinese "rims *or* discs" imported into the United States were or could eventually be subject to the orders. During the AD/CVD investigations, two importers, Trans Texas and HiSpec, specifically asked Commerce to clarify – ideally in the scope language itself – "that wheels comprised of rims or discs from China that are assembled in a third country with rims *or* discs from third countries are not within scope." *Asia Wheel Scope Ruling Request* at Exhibit 3

AMERICAS 125457403

(excerpts from Trans Texas's and HiSpec's case briefs) (emphasis added), Appx80048-80057.

Commerce responded:

> {A}s we find that the existing language sufficiently conveys the concept that third-country processing of a steel wheel ***must be of rims and discs produced in China*** and agree, generally, with the respondent/importer's understanding of this language, we do not find it necessary to adopt further clarification language proposed in the respondent/importer's affirmative scope comments.

*Final INV Scope Memo* at 24 (emphasis added), Appx80022; *see also supra* Section I.B.  At the same time, Commerce expressly rejected Dexstar's request that the scope language be modified to include trailer wheels manufactured in third countries from Chinese "rims ***or*** discs," deciding to maintain the "rims ***and*** discs" language in the final determination.  *Final INV Scope Memo* at 24 (emphases added), Appx80022.  Commerce went so far as to say:

> {W}e find that the use of the limit phrase ('or'), is intentionally and selectively expansionary and not consistent with the plain meaning of the word 'and.'  This finding is consistent with the reasonable interpretation of the existing language as it was seemingly understood by all parties, including Commerce, to this point.

*Id.*, Appx80022.  Given the administrative record, there was no basis for an importer to believe that trailer wheels processed in a third country with Chinese "rims ***or*** discs" were or potentially could be subject to the *AD/CVD Orders*.

Instead, Commerce gave importers the exact opposite of fair warning – a due process violation that is all the more egregious because the Importers have millions of dollars of AD/CVD liability at stake, facing a combined AD/CVD rate that exceeds 400%.  *AD/CVD Orders*, 84 Fed. Reg. 45954.  Because of Commerce's unlawful and unreasonable actions, the Importers are in this situation despite having conducted (and documented) onsite inspections of Asia Wheel's operation in Thailand to ensure compliance with the *AD/CVD Orders* based on their objectively reasonable interpretation of the scope language and Commerce's interpretation

36

of the scope in the AD/CVD investigations.  *See supra* Section I; *Importers' RFI* at 8-9, Exhibits 2-4, Appx80442-80443, Appx80480-80509.

Despite the unequivocal record recounted above and in more detail in Section I.B, Commerce claimed that "fair warning that merchandise produced pursuant to production methods such as those specified in Production Methods A and C, generally, may be the subject of a future scope inquiry was explicitly provided by the statements in the underlying investigation which considered this type of inquiry . . . ."  *Final Scope Ruling* at 40, Appx2821. As support for this contention, Commerce selectively quoted the following line from the *Final INV Scope Memo*:  "Commerce ***does not foreclose a further analysis*** of substantial transformation should a product be completed in a third country from a mix of rim and disc parts from China and a third country, if an interested party requests a scope ruling and/***or to address a future circumvention concern***."  *Id.* at 40-41 (emphases added), Appx2821-2822.  In doing so, however, Commerce omitted a critical passage immediately following the sentence it quoted:

> We find, ***at this time***, that ***the current scope language is clear that only if all constituent rim and disc parts to form a steel wheel are from China does the order apply*** notwithstanding any analysis of substantial transformation. Therefore, we will not adopt the petitioner's suggested language.  Furthermore, as we find that the existing language sufficiently conveys the concept that third-country processing of a steel wheel ***<u>must</u>*** be of ***rims <u>and</u> discs produced in China*** and agree, generally, with the respondent/importer's understanding of this language, we do not find it necessary to adopt the further clarification language proposed in the respondent/importer's affirmative scope comments.

*Final INV Scope Memo* at 24 (emphases added),  Appx2822.  Consequently, read in context, Commerce's final scope determination cannot be said to have provided fair warning to importers that trailer wheels manufactured in third countries with rims ***or*** discs from China were within scope.  Rather, Commerce communicated the opposite message.  Moreover, even if Commerce were correct that its *Final INV Scope Memo* provided notice of its intent to revisit whether

AMERICAS 125457403

AD/CVD should apply to such wheels, intent possibly to reconsider at some point in the future is *not* fair warning of instant AD/CVD applicability. *See Tai-Ao II*, 983 F.3d at 495.

*Tai-Ao* is instructive. In that case, Commerce initiated a circumvention inquiry in March 2016 as to one exporter and stated its intent to consider additional exporters later in the proceeding. *See Aluminum Extrusions from the People's Republic of China*, 81 Fed. Reg. 15039, 15039 (Dep't Commerce Mar. 21, 2016) (initiation circumvention inquiry). Subsequently, in November 2016, Commerce preliminarily found circumvention with respect to *all* exporters and retroactively assigned AD/CVD liability to those not initially named. *See Aluminum Extrusions from the People's Republic of China*, 81 Fed. Reg. 79444, 79446 (Dep't Commerce Nov. 14, 2016) (prelim. circumvention determ.). The court invalidated Commerce's unlawful retroactive AD/CVD assessment:

> The <u>Initiation Notice</u> does not provide any sort of set circumstances under which Commerce would determine all exporters were subject to the inquiry's findings. In fact, **the language "intends to consider whether the inquiry should apply" plainly indicates that Commerce had not yet determined the inquiry applied to all PRC exporters or the circumstances under which it would**. In contrast, the <u>Initiation Notice</u> **provides clear notice** that **the inquiry "covers** extruded aluminum products . . . exported by **Zhongwang**." If Commerce had wanted to conduct an inquiry into all PRC exporters, it **should have stated this fact in similarly clear language**.

*Tai-Ao Aluminum (Taishan) Co. v. United States*, 391 F. Supp. 3d 1301, 1314-15 (Ct. Int'l Trade 2019) ("*Tao-Ao I*") (emphases added), *opinion affirming remand*, 415 F. Supp. 3d 1391 (Ct. Int'l Trade 2019). The Federal Circuit affirmed: "A statement of intention to 'consider whether the inquiry should apply to all imports' is not the same as a notice that such imports are within the scope of the inquiry." *Tai-Ao II*, 983 F.3d at 495. Accordingly, Commerce's mere intent to revisit a position in the future does not constitute sufficient notice of AD/CVD liability.

AMERICAS 125457403

Likewise here, Commerce's statement in the AD/CVD investigations that "at this time" only wheels comprised of "rims and discs" from China are within the scope "plainly indicates that Commerce had not yet determined" that the scope included wheels comprised of "rims or discs" from China. Commerce's statement of intent to revisit that determination in the "future" is insufficient warning. "If Commerce had wanted" to include wheels made in third countries with "rims or discs" from China (but not both), "it should have stated this fact in similarly clear language." *Tai-Ao II*, 391 F. Supp. 3d at 1315.

This court in *Trans Texas*, which also involved the *AD/CVD Orders*, adopted the *Tai-Ao* reasoning to invalidate Commerce's retroactive assessment of AD/CVD on physical vapor deposition ("PVD") chrome wheels, holding:

> Commerce failed to provide adequate notice upon the initiation of the {AD/CVD} proceedings that PVD chrome wheels would not qualify for the exclusion for steel trailer wheels coated in chrome. Commerce's assessment of retroactive duties on PVD chrome wheels is therefore unlawful.

*Trans Texas I*, 519 F. Supp. 3d at 1287; *Trans Texas II*, 519 F. Supp. 3d at 1303. Here, Commerce likewise "failed to provide adequate notice" that wheels comprised of "rims or discs" from China were subject to the *AD/CVD Orders*, such that "Commerce's assessment of retroactive duties" on such wheels "is therefore unlawful." *Trans Texas I*, 519 F. Supp. 3d at 1287; *Trans Texas II*, 519 F. Supp. 3d at 1303.

The different contexts in which the scope issues presented in *Tai-Ao* and *Trans Texas* arose – a circumvention case in the former, and original AD/CVD investigations in the latter – do not detract from their relevance to this proceeding. The Federal Circuit in *Tai-Ao II* made clear that the "notice requirement is designed to avoid unfairness to importers and foreign exporters." *Tai-Ao II*, 983 F.3d at 494. Further, the *Trans Texas* Court rejected Defendant's argument that *Tai-Ao* notice should be different in a scope ruling context:

> Although the case cites to the anti-circumvention regulations, which are not at issue in this case, the Federal Circuit nevertheless emphasized the importance of fairness to affected importers in the assessment of duties. . . . Although the facts are not perfectly analogous to this case, <u>Tai-Ao I</u> and <u>Tai-Ao II</u> clearly show that adequate notice is essential where Commerce attempts to apply retroactive duties.

*Trans Texas I*, 519 F. Supp. 3d at 1287-1288 (citations omitted); *Trans Texas II*, 519 F. Supp. 3d at 1304 (citations omitted). There is no indication in either *Tai-Ao* or *Trans Texas* that critical due process protection regarding scope is only required in a circumvention proceeding or in an original AD/CVD investigation. Rather, both cases stand for the "broader due-process principle" that Commerce must provide fair warning of potential AD/CVD liability before liquidation of entries can be suspended. *Tai-Ao II*, 983 F.3d at 495; *see also Tai-Ao I*, 391 F. Supp. 3d at 1314-15; *Trans Texas I*, 519 F. Supp. 3d at 1287-88; *Trans Texas II*, 519 F. Supp. 3d at 1304-05.

In particular, *Tai-Ao* confirms that statements of intent to consider the potential application of AD/CVD in the future do not constitute fair warning, unless and until such time as Commerce acts on that tabled issue. *Tai-Ao I*, 391 F. Supp. 3d at 1314-15; *Tai-Ao II*, 983 F.3d at 495. Here, by Commerce's own admission, that fair warning occurred on March 22, 2021, the date of initiation of the underlying scope inquiry. *See* Commerce Letter to Interested Parties, RE: Initiation of Asia Wheel Scope Inquiry (A-570-090, C-570-091) (Mar. 22, 2021), Appx1410-1411.[7]

## B.    Commerce Unlawfully "Continued" CBP's Prior Suspension of Liquidation

Commerce instructed CBP to continue its prior suspension of liquidation under the EAPA relating to the wheels manufactured by Asia Wheel in Thailand despite CBP's admission that it could not determine whether the wheels were within the scope of the *AD/CVD Orders*. Commerce's instructions are unlawful because the Importers lacked fair warning that wheels

---

[7] Asia Wheel and the Importers referenced various dates in their Complaints as being the dates on which potential AD/CVD liability would attach and have now refined their position to argue that date of initiation of the scope inquiry is the appropriate date for purposes of this case.

AMERICAS 125457403

manufactured in a third country with rims *or* discs from China were potentially within the scope of the orders until March 22, 2021, as discussed above.  In declining to instruct CBP to terminate its prior (and retroactive) suspension of liquidation under the EAPA, Commerce impermissibly relied on the suspension of liquidation provision of its regulations, 19 C.F.R. § 351.225(l), in contravention of the broader due-process principle of adequate notice.

On December 17, 2020, Commerce received a covered merchandise (scope) referral request from CBP.  *CBP Referral*, Appx1386.  CBP made the request pursuant to 19 U.S.C. § 1517(b)(4)(A) because it was "unable to determine whether the merchandise at issue is covered merchandise {defined as merchandise covered by an AD or CVD order}" and stated that Commerce's "determination will assist CBP's EAPA investigation in determining which merchandise is subject to the payment of antidumping duties." *CBP Referral* at 2, Appx1387.  In response, Commerce stated that it "intend{ed} to determine whether the merchandise subject to the referral is covered by the scope of the orders" and that the covered merchandise referral would be addressed in the scope inquiry requested by Asia Wheel.  *Referral Notice*, 86 Fed. Reg. at 10246, Appx1398.

In its *Final Scope Ruling*, Commerce found that the scope language was ambiguous with respect to the trailer wheels manufactured by Asia Wheel in Thailand with one wheel component sourced from China, yet refused to acknowledge that it had not provided fair warning to importers that such wheels were within the scope of the *AD/CVD Orders*.  *Final Scope Ruling* at 14, 41-44, Appx2795, Appx2821-2825.  Commerce stated it would "instruct CBP to continue the suspension of liquidation for products found to be covered by the scope of the *Orders* if already suspended," *id.* at 40, Appx2821, citing 19 C.F.R. § 351.225(l)(3), and claimed it lacked

"authority to direct suspension of liquidation implemented by CBP {under interim measures pursuant to 19 U.S.C. 1517(e)}." *Id.* at 43, Appx2824.

To the contrary, Commerce has the ultimate authority to determine whether ***and when*** a product is within the scope of an order, subject to the due-process requirement of providing fair warning. *See Sunpreme Inc. v. United States*, 946 F.3d 1300, 1321 (Fed. Cir. 2020) (recognizing that, while CBP has initial authority to determine whether a given entry of imported merchandise is subject to the scope of an AD/CVD order, CBP cannot "'modify Commerce's determinations' or otherwise impinge on Commerce's authority to issue and set the scope of duty orders"); *Canadian Solar, Inc. v. United States*, 918 F.3d 909, 917 (Fed. Cir. 2019) ("{Because t}he Tariff Act does not require Commerce to define the 'class or kind of [foreign] merchandise' in any particular manner{,} . . . Commerce has the authority to fill that gap and define the scope of an order consistent with the countervailing duty and antidumping duty laws.") (citation omitted).

Under the EAPA specifically, Commerce has the authority to determine whether "the merchandise at issue is covered merchandise" in response to a CBP referral.   19 U.S.C. § 1517(b)(4)(A).   "Covered merchandise" means "merchandise that is subject to" an AD/CVD order.   19 U.S.C. § 1517(a)(3).   Inherently, a determination of whether imported merchandise is "subject to" an order may also entail ***when*** the merchandise ***became*** subject to the order.   Here, because Commerce did not provide the Importers with adequate notice that the trailer wheels imported from Asia Wheel were "subject to" the *AD/CVD Orders* until March 22, 2021, Commerce was bound by due-process principles and the Federal Circuit's decision in *Tai-Ao II* to direct CBP to terminate its prior suspension of liquidation applying to entries made before that date.

AMERICAS 125457403

This court has recognized that Commerce's determination of the scope overrides a contrary scope position taken by CBP:

> Customs' inclusion of merchandise in the EAPA investigation that had been determined by Commerce to be outside the scope of the Order is contrary to law because **the EAPA statute does not permit Customs to include merchandise that is not covered by the scope of the Order**. 19 U.S.C. § 1517(c)(1)(A). The Court notes that the EAPA statute states clearly that Commerce, not Customs, is the appropriate administering authority to issue a referral determination of whether merchandise is covered or not. Id. § 1517(b)(4)(A)(i), (B). **Allowing Customs to override and disregard a statutorily authorized Final Scope Ruling by the administering authority would be contrary to law** because this would effectively substitute Customs as the administering authority rather than Commerce. *Id*. § 1517(b)(4)(A)(i).

*Aspects Furniture Int'l Inc. v. United States*, 607 F. Supp. 3d 1246, 1267-1268 (Ct. Int'l Trade 2022) (emphases added).

Given the lack of fair warning, Commerce should have instructed CBP that the imports were not covered merchandise prior to the date of initiation of the scope inquiry. Doing so was necessary to be consistent with the reformulated liquidation instructions required in *Tai-Ao*, for which the Court instructed: "Because Commerce did not provide adequate notice . . . until November 14, 2016, Commerce's instructions to suspend liquidation effective March 21, 2016, were not in accordance with law." *Tai-Ao II*, 983 F.3d at 497. Such action is further necessary to be consistent with *Trans Texas,* in which the court affirmed reformulated liquidation instructions that provided "imports of PVD chrome wheels entered, or withdrawn {from} warehouse, for consumption between the date of publication of Commerce's *Preliminary Determination* and the day before the date of publication of Commerce's *Final Determination* are outside the scope of the investigation." *Trans Texas Tire, LLC v. United States*, 545 F. Supp. 3d 1374, 1377 (Ct. Int'l Trade 2021); *Trans Texas Tire, LLC v. United States*, 545 F. Supp. 3d 1378, 1382 (Ct. Int'l Trade 2021).

AMERICAS 125457403

The Federal Circuit's decision in *Sunpreme* does not require a different result.  In that case CBP determined the merchandise at issue was subject to an AD order and, consequently, suspended liquidation of those entries.  The Federal Circuit upheld Commerce's instructions for CBP to continue suspension of liquidation even though the scope at issue was ambiguous, holding that "Customs has the authority to suspend liquidation of goods ***when it determines*** that the goods fall within the scope of an ambiguous {AD/CVD} order."  *Sunpreme*, 946 F.3d at 1321 (emphasis added).  Here, in stark contrast, CBP was ***unable to determine*** that the wheels in question were within the scope of the *AD/CVD Orders* and referred that question to Commerce.  Consequently, *Sunpreme* does not require Commerce to continue the prior (and retroactive) suspension of liquidation imposed by CBP.  To the contrary, "the broader due-process principle" of fair warning required Commerce to instruct CBP to terminate its prior suspension of liquidation and to commence suspension as of March 22, 2021, at the earliest.  Unlike here, the Federal Circuit affirmed Commerce's decision to continue CBP's prior suspension of liquidation in *Sunpreme* because "retroactivity concerns" were not raised.  *See Sunpreme*, 946 F.3d at 1319.

In the *Final Scope Ruling*, Commerce cited *Diamond Tools Technology LLC v. United States*, 545 F. Supp. 3d 1324 (Ct. Int'l Trade 2021) as supporting CBP's separate authority to suspend liquidation under the EAPA.  *Final Scope Ruling* at 45, Appx2826.  That case, however, is distinguishable.  In *Diamond Tools*, the court upheld CBP's decision to continue a prior suspension of liquidation imposed as interim measures under the EAPA, where Commerce had not imposed any temporal limitation on CBP's authority to suspend liquidation in its response to a covered merchandise referral.  *See* 545 F. Supp. 3d at 1348.  Whereas *Diamond Tools* involved a challenge to CBP's EAPA authority directly, here Asia Wheel and the Importers contest ***Commerce's*** unlawful decision to continue a prior (and retroactive) suspension of liquidation in

AMERICAS 125457403

violation of "the broader due-process principle" that importers must have fair warning before their imported merchandise is subject to AD/CVD liability. *See Tai-Ao II*, 983 F.3d at 495.

We respectfully ask the Court to issue remand instructions to Commerce to reformulate its suspension of liquidation instructions and response to CBP's covered merchandise referral such that entries of the wheels at issue prior to the date of initiation of the scope inquiry are not considered "covered merchandise" – subject to the *AD/CVD Orders* – until March 22, 2021, the date on which the Importers received adequate notice.

## CONCLUSION AND RELIEF SOUGHT

For the reasons discussed above, Plaintiff Asia Wheel, Consolidated Plaintiffs TRAILSTAR and Lionshead, and Plaintiff-Intervenor TexTrail respectfully request that the Court:

1)     Enter judgment in favor of Plaintiff, Consolidated Plaintiffs, and Plaintiff-Intervenor;

2)     Hold that Commerce's *Final Scope Ruling* is unsupported by substantial evidence and otherwise not in accordance with law;

3)     Remand this matter to Commerce to issue a revised final determination in conformity with the Court's opinion; and

4)     Grant Plaintiff, Consolidated Plaintiffs, and Plaintiff-Intervenor such additional relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Jay C. Campbell
Jay C. Campbell
Walter J. Spak
Chunfu Yan
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005

45

(202) 626-3600
jcampbell@whitecase.com
*Counsel to Plaintiff Asia Wheel Co., Ltd.*

/s/ Nancy A. Noonan
Nancy A. Noonan
Yun Gao
Leah N. Scarpelli
ArentFox Schiff LLP
1717 K Street, NW
Washington, DC 20006-5344
(202) 857-6479
nancy.noonan@afslaw.com
*Counsel to Plaintiff-Intervenor TexTrail, Inc.*

/s/  Jordan C. Kahn
Jordan C. Kahn
GRUNFELD DESIDERIO LEBOWITZ
SILVERMAN & KLESTADT, LLP
1201 New York Ave., NW Ste. 650
Washington, DC 20005
(202) 661-7784
jkahn@gdlsk.com
*Counsel to Consolidated Plaintiff TRAILSTAR*
*LLC*

/s/ R. Kevin Williams
R. Keving Williams
Clark Hill
130 E. Randolph Street, Suite 3900
Chicago, IL 60601
(312) 985-5907
kwilliams@clarkhill.com

*Counsel to Consolidated Plaintiff Lionshead*
*Specialty Tire and Wheel LLC*

Date:  November 20, 2023

AMERICAS 125457403

## CERTIFICATE OF COMPLIANCE

Pursuant to Chambers Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement.  The word count for the Memorandum of Points and Authorities in Support of the Motion for Judgment on the Agency Record filed by Asia Wheel Co., Ltd.; TexTrail, Inc.; TRAILSTAR LLC; and Lionshead Specialty Tire and Wheel LLC, as computed by White & Case LLP's word processing system (Microsoft Word 2016) and manual count, is 13,793 words (including 20 words from the images on pages 5 and 12).

/s/ Jay C. Campbell
Jay C. Campbell

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE**

| | |
|---|---|
| ASIA WHEEL CO., LTD., | |
| Plaintiff, | |
| and | |
| TRAILSTAR LLC, LIONSHEAD SPECIALTY TIRE AND WHEEL LLC, | |
| Consolidated Plaintiffs, | |
| and | Consol. Court No. 23-00096 |
| TEXTRAIL, INC., | |
| Plaintiff-Intervenor, | |
| v. | |
| UNITED STATES, | |
| Defendant, | |
| and | |
| DEXSTAR WHEEL DIVISION OF AMERICANA DEVELOPMENT, INC., | |
| Defendant-Intervenor. | |

## <u>ORDER</u>

Upon consideration of Plaintiff's, Consolidated Plaintiffs', and Plaintiff-Intervenor's motion for judgment upon the agency record pursuant to Rule 56.2 of the Rules of this Court, the Court, having reviewed the papers and pleadings on file herein, and after due deliberation, it is hereby:

**ORDERED** that Plaintiff's, Consolidated Plaintiffs', and Plaintiff-Intervenor's motion is granted; and it is further

**ORDERED** that this matter is remanded to the United States Department of Commerce for disposition consistent with the Court's final opinion.

**SO ORDERED.**

Dated: _____, 2023
New York, New York                                    _____
                                                      Stephen Alexander Vaden, Judge

AMERICAS 125457403