**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE GARY S. KATZMANN, JUDGE**

ASIA WHEEL CO., LTD.,

               Plaintiff,

    and

TRAILSTAR LLC, LIONSHEAD
SPECIALTY TIRE AND WHEEL LLC,

               Consolidated Plaintiffs,

    and

DEXTER DISTRIBUTION GROUP LLC
F/K/A TEXTRAIL, INC.,

               Plaintiff-Intervenor,

    v.

UNITED STATES,

               Defendant,

    and

DEXSTAR WHEEL DIVISION OF
AMERICANA DEVELOPMENT, INC.,

               Defendant-Intervenor.

Consol. Court No. 23-00096

**PLAINTIFF'S, CONSOLIDATED PLAINTIFFS', AND PLAINTIFF-INTERVENOR'S**
**REPLY BRIEF**

Jay C. Campbell
Walter J. Spak
Chunfu Yan
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005

Nancy A. Noonan
Yun Gao
Leah N. Scarpelli
ARENTFOX SCHIFF LLP
1717 K Street, NW
Washington, DC 20006-5344

Jordan C. Kahn
GRUNFELD DESIDERIO LEBOWITZ
SILVERMAN & KLESTADT, LLP
1201 New York Ave., NW Ste. 650
Washington, DC 20005

R. Kevin Williams
CLARK HILL
130 E. Randolph Street, Suite 3900
Chicago, IL 60601

May 31, 2024

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................... 1

II.    ARGUMENT ................................................................................................ 2

    A.    The Government and Dexstar Fail To Demonstrate that Commerce's
    Misinterpretation of the Scope Should Be Sustained ................................................2

        1.    The plain language of the scope does not include Chinese-origin
        discs that are welded in a third country with nonsubject rims to
        manufacture a finished trailer wheel.............................................................3

        2.    The record lacks substantial evidence for Commerce's claim that it
        deferred consideration of the "discs or rims" scope issue in the
        original AD/CVD investigations................................................................5

    B.    The Government and Dexstar Fail To Demonstrate that Commerce's
    Flawed "Substantial Transformation" Determination Should Be Sustained ..........8

        1.    Commerce itself framed the "new name, character, and use" test as
        the underpinning for its "substantial transformation" analysis...................8

        2.    Commerce's analysis of the "essential component" factor illustrates
        its flawed approach and is unsupported by substantial evidence..............11

    C.    The Government and Dexstar Fail To Demonstrate that Commerce
    Lawfully and Reasonably Determined that the Entire Finished Wheel
    Manufactured in Thailand Is Subject to the Scope of the *AD/CVD Orders* ..........14

    D.    The Government and Dexstar Fail To Demonstrate that Commerce
    Lawfully Directed CBP To Continue To Suspend Liquidation of Imports
    Entered before the Importers Had Adequate Notice of AD/CVD Liability ..........16

        1.    Possible scope coverage is not "adequate notice" .....................................17

        2.    Commerce, not CBP, has the ultimate authority to determine
        whether and when merchandise is subject to an AD/CVD order .................19

III.   CONCLUSION............................................................................................ 23

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aspects Furniture Int'l Inc. v. United States,*
    607 F. Supp. 3d 1246 (Ct. Int'l Trade 2022) ..........................................................20

*Bell Supply Co., LLC v. United States,*
    348 F. Supp. 3d 1281 (Ct. Int'l Trade 2018) .............................................................8

*Bell Supply Co., LLC v. United States,*
    888 F.3d 1222 (Fed. Cir. 2018)..............................................................................8, 9

*Bestfoods v. United States,*
    165 F.3d 1371 (Fed. Cir. 1999)..................................................................................8

*Burlington Truck Lines, Inc. v. United States,*
    371 U.S. 156 (1962)....................................................................................................5

*Canadian Solar, Inc. v. United States,*
    918 F.3d 909 (Fed. Cir. 2019)..................................................................................20

*Cormorant Shipbuilding Corp. v. United States,*
    617 F. Supp. 2d 1270 (Ct. Int'l Trade 2009) ............................................................4

*Diamond Tools Tech. LLC v. United States,*
    545 F. Supp. 3d 1324 (Ct. Int'l Trade 2021) ..........................................................21

*E.I. DuPont de Nemours & Co. v. United States,*
    8 F. Supp. 2d 854 (Ct. Int'l Trade 1998) ..................................................................9

*Eckstrom Indus., Inc. v. United States,*
    254 F.3d 1068 (Fed. Cir. 2001)...............................................................................15

*Katunich v. Donovan,*
    599 F. Supp. 985 (Ct. Int'l Trade 1984) .................................................................10

*Meridian Prods., LLC v. United States,*
    851 F.3d 1375 (Fed. Cir. 2017)............................................................................3, 7

*Mid Continent Nail Corp. v. United States,*
    725 F.3d 1295 (Fed. Cir. 2013)...............................................................................16

*NMB Sing. Ltd. v. United States,*
    557 F.3d 1316 (Fed. Cir. 2009)...............................................................................10

AMERICAS 127038407

*Peacock v. Lubbock Compress Co.*,
  252 F.2d 892 (5th Cir. 1958) ...................................................................................4

*Peer Bearing Co.-Changshan v. United States*,
  128 F. Supp. 3d 1286 (Ct. Int'l Trade 2015) ........................................................12

*Peer Bearing Co.-Changshan v. United States*,
  914 F. Supp. 2d 1343 (Ct. Int'l Trade 2013) ..................................................13, 15

*Sunpreme Inc. v. United States*,
  946 F.3d 1300 (Fed. Cir. 2020) .......................................................................20, 22

*Tai-Ao Aluminum (Taishan) Co. v. United States*,
  983 F.3d 487 (Fed. Cir. 2020) ..........................................................17, 18, 21, 22

*Trans Texas Tire, LLC v. United States*,
  519 F. Supp. 3d 1275 (Ct. Int'l Trade 2021) ..................................................17, 18

*Trans Texas Tire, LLC v. United States*,
  519 F. Supp. 3d 1289 1304-05 (Ct. Int'l Trade 2021) ...........................................17

*United States v. Fisk*,
  70 U.S. 445, 447 (1865) ............................................................................................4

*United States v. Pulsifer*,
  39 F.4th 1018 (8th Cir. 2022),
  *cert. granted*, 143 S. Ct. 978 (2023) .....................................................................4

*Walgreen Co. of Deerfield, IL v. United States*,
  620 F.3d 1350 (Fed. Cir. 2010) ..............................................................................16

## STATUTES AND REGULATIONS

19 U.S.C. § 1517(a)(3) ...............................................................................................20, 21

19 U.S.C. § 1517(b)(4) .....................................................................................................20

19 U.S.C. § 1517(b)(4)(A) ..........................................................................................21, 22

19 U.S.C. § 1517(b)(4)(A)(i) ............................................................................................20

19 U.S.C. § 1517(e) ..........................................................................................................20

19 C.F.R. § 351.225(k)(l) ...................................................................................................5

19 C.F.R. § 351.225(l) ................................................................................................21, 22

Enforce and Protect Act of 2015,
  Pub. L. 114-125, 130 Stat. 122, 155, Feb. 24, 2016 ............................................19

iii

**ADMINISTRATIVE DETERMINATIONS & PUBLICATIONS**

*Certain Steel Trailer Wheels 12 to 16.5 Inches from the People's Republic of China*,
   84 Fed. Reg. 45952, 45954 (Dep't Commerce Sept. 3, 2019)
   ("*AD/CVD Orders*") .................................................................................3, 14, 15, 19

AMERICAS 127038407

## I.    INTRODUCTION

On behalf of Plaintiff Asia Wheel Co., Ltd. ("Asia Wheel"); Consolidated Plaintiffs TRAILSTAR LLC ("TRAILSTAR") and Lionshead Specialty Tire and Wheel LLC ("Lionshead"), and Plaintiff-Intervenor Dexter Distribution Group LLC f/k/a TexTrail, Inc. ("TexTrail")[1] (collectively, the "Importers"); we hereby reply to Defendant United States' Response Brief (ECF No. 48) ("Gov't. Response Br.") and Defendant-Intervenor Dexstar Wheel Division of Americana Development, Inc.'s ("Dexstar" or "Petitioner") Response Brief (ECF No. 52) ("Dexstar Response Br.").[2]

In attempting to defend the U.S. Department of Commerce's ("Commerce") *Final Scope Ruling*, Defendant (the "Government") and Dexstar merely reiterate flawed conclusions by Commerce that are either impermissible under the law or unsupported by the record evidence; misconstrue case precedent; misstate key facts; and mischaracterize or avoid confronting plaintiffs' arguments.  For the reasons discussed in their initial brief and further below, Plaintiff Asia Wheel, Consolidated Plaintiffs TRAILSTAR and Lionshead, and Plaintiff-Intervenor TexTrail respectfully request that the Court hold that Commerce's *Final Scope Ruling* is unsupported by substantial evidence and otherwise not in accordance with law and enter judgment in favor of all Plaintiff parties.

---

[1] TexTrail is also a Consolidated Plaintiff.

[2] For documents in the administrative record with both proprietary and public versions, we cite the joint appendix page(s) for the proprietary version.  We also refer to record documents using the abbreviated names set forth in Plaintiff's, Consolidated Plaintiffs', and Plaintiff-Intervenor's Memorandum of Points and Authorities accompanying their Motion for Judgment on the Agency Record (ECF No. 47) ("Pls. Br.").

## II.     ARGUMENT

As discussed below, the Government and Dexstar fail to demonstrate that the following decisions by Commerce in the *Final Scope Ruling* should be sustained as supported by substantial evidence and/or in accordance with law:  (1) Commerce's misinterpretation of the plain language of the scope of the *AD/CVD Orders*, as well as its own scope determination in the original antidumping duty ("AD") and countervailing duty ("CVD") investigations, both of which were unequivocal that wheels manufactured in a third country with only Chinese-origin discs **or** rims (not both) are outside the scope; (2) Commerce's flawed determination that Chinese-origin discs were not substantially transformed in Thailand after being welded with nonsubject rims (which are essential components of a wheel) and painted to form a trailer wheel (*i.e.*, a new product having a new name, character, and use); (3) Commerce's impermissible and illogical determination that the entire trailer wheel imported from Thailand is subject to the *AD/CVD Orders*, when only Chinese-origin discs were imported into Thailand for the manufacture of the wheels; and (4) Commerce's unlawful continuation of U.S. Customs and Border Protection's ("CBP") prior suspension of liquidation of imports entered before importers had adequate notice of AD/CVD liability.

### A.     The Government and Dexstar Fail To Demonstrate that Commerce's Misinterpretation of the Scope Should Be Sustained

Asia Wheel and the Importers (collectively, "Plaintiffs") demonstrated that the plain language of the scope of the *AD/CVD Orders* cannot reasonably be interpreted to include steel wheels manufactured in third countries using discs **or** rims from the People's Republic of China ("China").  *See* Pls. Br. at 18-27.  In response, the Government and Dexstar, like Commerce below, misconstrue both the plain language of the scope and Commerce's interpretation of the scope in the original AD/CVD investigations, in which Commerce confirmed that the scope language "sufficiently conveys the concept that third-country processing of a steel wheel ***must be of rims***

AMERICAS 127038407

***and discs produced in China*** . . . ." *Final INV Scope Memo* at 22-23 (emphasis added), Appx80020-80021.

> **1.    The plain language of the scope does <u>not</u> include Chinese-origin discs that are welded in a third country with nonsubject rims to manufacture a finished trailer wheel**

Interpretation of the plain language of the scope of an AD/CVD order is a legal question that the court reviews *de novo*. *Meridian Prods., LLC v. United States*, 851 F.3d 1375, 1381 (Fed. Cir. 2017). Here, the plain language of the scope of the *AD/CVD Orders* does not include wheels manufactured in third countries where only one of the two essential wheel components originates from China. In arguing that the scope is ambiguous, the Government and Dexstar misconstrue its terms, offering an interpretation of "and" that Commerce itself rejected in the *Final Scope Ruling.*

The *AD/CVD Orders* state:

> The scope includes ***rims, discs, and wheels*** that have been ***further processed*** in a third country, ***including, but not limited to***, the painting of wheels from China and the welding and painting of ***rims <u>and</u> discs from China*** to form a steel wheel, or any other processing that would not otherwise remove the merchandise from the scope of the *Orders* if performed in China.

*Certain Steel Trailer Wheels 12 to 16.5 Inches from the People's Republic of China*, 84 Fed. Reg. 45952, 45954 (Dep't Commerce Sept. 3, 2019) ("*AD/CVD Orders*") (emphases added). The Government and Dexstar assert that the "including, but not limited to" language indicates that the scope's reference to "rims and discs from China" is not exhaustive, such that Commerce reasonably concluded in the *Final Scope Ruling* that the scope is ambiguous with respect to trailer wheels produced in third countries with rims ***or*** discs from China (but not both). *See* Gov't. Response Br. at 13; Dexstar Response Br. at 6-7. According to the Government, "plain language does not address what varieties of processing may otherwise exclude a product from the scope." Gov't. Response Br. at 12.

AMERICAS 127038407

If, however, a wheel is manufactured in a third country with a Chinese-origin disc or rim (but not both), the Chinese-origin component is not merely "further processed" in a third country. For example, with respect to the "Method A Wheels" at issue in this case, Asia Wheel does not merely "further process" Chinese-origin discs in Thailand.  Rather, Asia Wheel manufactures the rims, welds the Thai-origin rims to the Chinese-origin discs, and paints the wheels.  *See Asia Wheel Scope Ruling Request* at Exhibit 4; Appx80060-800061.  While the *AD/CVD Orders* include Chinese-origin discs that are further processed in a third country and then shipped to the United States as further-processed discs, the plain language of the scope does ***not*** include Chinese-origin discs that are welded to nonsubject rims and painted to form a finished trailer wheel in a third country.  Rather, the *AD/CVD Orders* include wheels manufactured in third countries only when both the discs and the rims originate from China (*i.e.*, "the welding and painting of rims and discs from China to form a steel wheel").  In concluding otherwise, Commerce impermissibly interpreted the *AD/CVD Orders* contrary to their terms, such that its *Final Scope Ruling* is not in accordance with law.

Citing various cases, the Government and Dexstar also claim that "and" does not necessarily have a conjunctive meaning, as if to suggest that "rims ***and*** discs from China" could be interpreted to mean "rims ***or*** discs from China."  Gov't. Response Br. at 13 n.1 (citing *Cormorant Shipbuilding Corp. v. United States*, 617 F. Supp. 2d 1270, 1279 (Ct. Int'l Trade 2009); *United States v. Pulsifer*, 39 F.4th 1018, 1022 (8th Cir. 2022), *cert. granted*, 143 S. Ct. 978 (2023)); Dexstar Response Br. at 12-13 (citing *United States v. Fisk*, 70 U.S. 445, 447 (1865); *Peacock v. Lubbock Compress Co.*, 252 F.2d 892, 893 (5th Cir. 1958)).  Even if "and" could somehow be interpreted to mean "or," this is irrelevant because Commerce did not take this position below.  Rather, because the scope states "rims and discs from China," Commerce rejected Dexstar's

AMERICAS 127038407

argument in the original AD/CVD investigations "that either a rim *or* a disc from China would be covered by these investigations, not only a rim and a disc together." *Final INV Scope Memo* at 23-24 (emphasis added), Appx80021-80022; *see also id.* at 24, Appx80022 ("{W}e find that the use of the limit phrase ('or'), is intentionally and selectively expansionary and not consistent with the plain meaning of the word 'and.'"). The Court may only sustain Commerce's decision "on the same basis articulated . . . by the agency itself." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168-69 (1962).

### 2. The record lacks substantial evidence for Commerce's claim that it deferred consideration of the "discs or rims" scope issue in the original AD/CVD investigations

Commerce's scope determination in the original AD/CVD investigations – a consideration under 19 C.F.R. § 351.225(k)(l) – further demonstrates that both the discs and rims of the wheels must originate from China for steel wheels manufactured in third countries to fall within the scope of the *AD/CVD Orders*. In the *Final Scope Ruling*, however, Commerce unreasonably denied having confirmed in the investigations that wheels manufactured in third countries with only one wheel component from China are outside the scope. Attempting to defend Commerce's groundless reversal of its prior position, the Government and Dexstar, like Commerce below, selectively rely on one isolated sentence taken out of context.

The Government and Dexstar maintain that "Commerce declined respondents' request to 'explicitly confirm that only rims and discs from China assembled into wheels in third countries are within scope.'" Gov't. Response Br. at 4; *see also id.* at 8; Dexstar Response Br. at 8. This is not what happened. Rather, in the original AD/CVD investigations, Commerce declined certain importers' request that it amend the scope language to exclude more clearly wheels manufactured in third countries with discs *or* rims (but not both) from China, but only because it considered the existing scope language sufficient to exclude such wheels.

AMERICAS 127038407

Specifically, two importers, Trans Texas Tire, LLC ("Trans Texas") and Hi-Spec Wheel & Tire, Inc. ("HiSpec"), argued in case briefs that, although "{t}he plain meaning and the intent of {the third-country-processing} language is to include only steel wheels assembled in a third country when both the rims <u>and</u> discs originate from China{,}" the "plain meaning of this scope . . . potentially may be undermined by the phrase 'including but not limited to' in the *Preliminary AD Determination* scope." *Asia Wheel Scope Ruling Request* at Exhibit 3, Appx80051-80052, Appx80055-80056. Consequently, both importers asked Commerce to confirm in the final determination – "ideally written into the scope itself" – "that wheels comprised of <u>rims or discs</u> from China that are assembled in a third country with <u>rims or discs</u> from third countries are not within scope." *Id.*, Appx80052, Appx80056.

Commerce's response was unequivocal. In its final scope determination issued in the AD/CVD investigations, Commerce declined to amend the scope language to incorporate Trans Texas's and HiSpec's request, but only because "the existing language sufficiently conveys the concept that third-country processing of a steel wheel ***must be of rims <u>and</u> discs produced in China***" for the imported wheel to fall within scope. *Final INV Scope Memo* at 22-23 (emphasis added), Appx80020-80021. Commerce reiterated this position at the conclusion of its analysis, stating:

> Furthermore, as we find that the existing language sufficiently conveys the concept that third-country processing of a steel wheel ***must be of rims <u>and</u> discs produced in China*** and agree, generally, with the respondent/importer's understanding of this language, we do not find it necessary to adopt further clarification language proposed in the respondent/importer's affirmative scope comments.

*Id.* at 24 (emphasis added), Appx800022. Based on this context, Commerce's claim in the *Final Scope Ruling* that it had deferred resolution of the "discs ***or*** rims from China" question in the original AD/CVD investigations is unreasonable and unsupported by substantial evidence.

Ignoring this context, the Government and Dexstar selectively rely on the following isolated line from Commerce's final scope determination in the investigations:

> Commerce does not foreclose a further analysis of substantial transformation should a product be completed in a third country from a mix of rim and disc **parts** from China and a third country, if an interested party requests a scope ruling and/or to address a future circumvention concern.

*Final INV Scope Memo* at 24 (emphasis added), Appx80022; *see* Gov't. Response Br. at 14-15; Dexstar Response Br. at 8. Read in context, however, this statement cannot mean that steel wheels manufactured in a third country with discs *or* rims (but not both) from China are within scope, because just two sentences later Commerce reiterated that "the existing language sufficiently conveys the concept that third-country processing of a steel wheel **must be of rims _and_ discs produced _in China_** . . . ." *Final Scope Ruling* at 24 (emphasis added), Appx800022. Furthermore, while Dexstar stresses that "a mix of rim and disc means a mix of rim and disc," Dexstar Response Br. at 11, the isolated line on which the Government and Dexstar rely refers to a "mix of rim and disc **parts**" not a "mix of rim and disc." Read in context, Commerce's reference to a "mix of rim and disc **parts**" cannot reasonably be interpreted to contradict its explicit confirmation in the AD/CVD investigations that "third-country processing of a steel wheel **must be of rims _and_ discs produced _in China_**" for the imported wheel to be within scope. (Emphasis added.)

In conclusion, Commerce's scope determination in the original investigations confirms that the agency interpreted the plain language of the *AD/CVD Orders* to mean "that third-country processing of a steel wheel **must be of rims _and_ discs produced in China**" for the imported wheel to be within scope. Commerce's recharacterization of its earlier analysis in the *Final Scope Ruling* is unreasonable and unsupported by substantial evidence. *See Meridian*, 851 F.3d at 1382 ("Commerce's analysis of {the § 351.225(k)(1)} sources against the product in question produces factual findings reviewed for substantial evidence.").

AMERICAS 127038407

B.    **The Government and Dexstar Fail To Demonstrate that Commerce's Flawed "Substantial Transformation" Determination Should Be Sustained**

Plaintiffs demonstrated that, in analyzing "substantial transformation," Commerce disregarded the fundamental question of whether Asia Wheel's manufacturing operations in Thailand resulted in a product with a new name, character, and use, and nonsensically reasoned that a disc alone already exhibits the essential characteristics of a finished trailer wheel. *See* Pls. Br. at 27-32. In response, the Government and Dexstar dismiss the relevance of the "new name, character, and use test," overlooking that Commerce itself cited this test as the legal framework for its "substantial transformation" analysis. The Government and Dexstar also fail to defend Commerce's flawed logic that a disc is equivalent to a wheel.

1.    **Commerce itself framed the "new name, character, and use" test as the underpinning for its "substantial transformation" analysis**

The U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") has held that "{a} substantial transformation occurs where, 'as a result of manufacturing or processing steps . . . [,] the [product] loses its identity and is transformed into a new product having a new name, character and use." *Bell Supply Co., LLC v. United States*, 888 F.3d 1222, 1228 (Fed. Cir. 2018) (quoting *Bestfoods v. United States*, 165 F.3d 1371, 1373 (Fed. Cir. 1999)). Here, in finding the absence of a substantial transformation, Commerce ignored the fundamental question of whether the Chinese-origin disc became a "new product having a new name, character and use" after being transformed into a steel wheel in Thailand. Consequently, Commerce's substantial transformation determination is not in accordance with law.

Attempting to defend Commerce's approach, the Government and Dexstar assert that "'the new name, character, and use' standard is primarily used by CBP in its country-of-origin analysis" – not Commerce. Gov't. Response Br. at 20 (citing *Bell Supply Co., LLC v. United States*, 348 F. Supp. 3d 1281, 1287-88 n.6 (Ct. Int'l Trade 2018)); Dexstar Response Br. at 16 (same). Both

AMERICAS 127038407

parties overlook, however, that Commerce itself identified the "new name, character, and use" test as the underpinning for its "substantial transformation" analysis.  In the "Legal Framework" section of its final and preliminary scope rulings, Commerce stated:

> ***Commerce's*** substantial transformation analysis asks:
>
> (1) whether, as a result of the manufacturing or processing, the product loses its identity and is transformed into a new product having a new name, character, and use; and
>
> (2) whether through that transformation, the new article becomes a product of the country in which it was processed or manufactured.

*Final Scope Ruling* at 7-8 (emphasis added), Appx2788-2789.  Commerce elaborated that it "***may*** examine a number of factors in conducting its substantial transformation analysis," listing the following five factors:  (1) class or kind of merchandise; (2) essential component and end-use; (3) nature/sophistication of processing; (4) cost of production/value added; and (5) level of investment.  *Id.* at 8 (emphasis added), Appx2789.

Thus, as recognized by the Federal Circuit in *Bell Supply*, the fundamental question under Commerce's "substantial transformation" analysis is whether the manufacturing or processing results in a new product having a "new name, character, and use."  The purpose of the five factors is to inform Commerce's analysis of this question.  Contrary to the Government's contention, *see* Gov't. Response Br. at 21, the five factors do not "supplant" Commerce's obligation to address the fundamental question of new name, character, and use.  *See Bell Supply*, 888 F.3d at 1228 & 1230; *see also E.I. DuPont de Nemours & Co. v. United States*, 8 F. Supp. 2d 854, 859 (Ct. Int'l Trade 1998) ("Substantial transformation generally refers to a degree of processing resulting in a new and different article.").

"Once Commerce establishes a course of action, . . . Commerce is obliged to follow it until Commerce provides a sufficient, reasoned analysis explaining why a change is necessary . . . ."

AMERICAS 127038407

*NMB Sing. Ltd. v. United States*, 557 F.3d 1316, 1328 (Fed. Cir. 2009); *see also Katunich v. Donovan*, 599 F. Supp. 985, 986 (Ct. Int'l Trade 1984) ("It is a sound principle of administrative law than an administrative agency must either follow or adhere to existing policies and precedents or explain its noncompliance or deviation.").  Here, despite framing the central question as whether the third-country operations resulted in a new product with a "new name, character, and use," Commerce arbitrarily ignored that question in addressing whether a substantial transformation occurred.  Despite its detailed analysis of the five factors, Commerce failed to address whether the Chinese-origin disc became a new product in Thailand, having a new name, character, and use.  Only by ducking the fundamental question was Commerce able to conclude that the Chinese-origin disc was not substantially transformed in Thailand into a finished trailer wheel.

The Government and Dexstar also mischaracterize Plaintiffs' argument.  The Government asserts that adopting the "new name, character, and use" test "as the 'sole basis of analysis would result in even minor finishing/assembly operations sufficient to determine country of origin and render the existing substantial transformation factors moot . . . .'"  Gov't. Response Br. at 20-21 (quoting Appx2809).  This is not Plaintiffs' argument.  Rather, Plaintiffs submit that, consistent with Commerce's own articulation of the "Legal Framework" for a "substantial transformation" analysis, the "new name, character, and use" test is the central question for Commerce to address, informed by its consideration of the five factors.

Equally misleading, Dexstar argues:

> Plaintiffs' position that ***any transformation*** is sufficient because a new product is formed (***and so there is a new name***) would allow exporters free reign to escape the geographical reach of the scope of any AD or CVD order by simply performing some transformation to a finished product in a third-country, while continuing to use ***the same essential inputs*** as the product that had been determined to be injurious to the domestic industry.

Dexstar Response Br. at 19 (emphases added).  Plaintiffs argue no such thing.  Rather, Commerce is required to examine whether manufacturing or processing effects a ***substantial*** transformation, yielding not only a new product with a new name, but also a new product of different character and use.  At its facility in Thailand, Asia Wheel manufactures essential components, the rims; welds the Thai-origin rims to the Chinese-origin discs; and paints the wheels to produce finished steel trailer wheels.  Yet Commerce never addressed whether the product manufactured in Thailand (a steel trailer wheel) has a different name, character, and use than the Chinese-origin disc.  Commerce's failure to apply the proper legal standard renders its substantial transformation determination not in accordance with law.

### 2.    Commerce's analysis of the "essential component" factor illustrates its flawed approach and is unsupported by substantial evidence

Plaintiffs further demonstrated that Commerce's analysis of the "essential component" factor illustrates its failure to apply the correct legal standard for substantial transformation, and also is unsupported by substantial evidence.  *See* Pls. Br. at 30-31.  In response, the Government misconstrues precedent and misstates the facts, while both the Government and Dexstar fail to address Plaintiffs' principal argument concerning the lack of substantial evidence supporting Commerce's "essential component" analysis.

Applying the "new name, character, and use" framework, the fundamental question in this case is whether the essential qualities and function of the Chinese-origin disc differ from the essential qualities and function of the finished trailer wheel manufactured in Thailand and imported into the United States.  Contrary to this standard, Commerce found a lack of substantial transformation because the Chinese-origin discs continued to function as such after incorporation into the finished trailer wheel, all but ignoring the product imported into the United States.  *See Final Scope Ruling* at 18, 20, 28, 35, Appx2459, Appx2461, Appx2809, Appx2816.  In response,

AMERICAS 127038407

the Government claims that this "Court rejected a similar argument in *Peer Bearing*, where it considered whether unfinished and finished parts from China were substantially transformed into finished {tapered roller bearings} in Thailand." Gov't. Response Br. at 23 (citing *Peer Bearing Co.-Changshan v. United States*, 128 F. Supp. 3d 1286, 1303 (Ct. Int'l Trade 2015)). *Peer Bearing*, however, **supports** Plaintiffs' substantial transformation argument in this case.

*Peer Bearing* involved the AD order on tapered roller bearings ("TRB") from China. *Peer Bearing*, 128 F. Supp. 3d at 1288. In that case, all four parts of the TRB (*i.e.*, the cups, cones, rollers, and cages) were produced in China, but an affiliate in Thailand performed the finishing operations on the cups and cones, and "then assembled the finished cups and cones, together with finished rollers and cages that . . . had {been} manufactured in China and exported to Thailand, to produce the completed TRBs that were exported to the United States." *Id*. at 1290. The court rejected Commerce's determination that the processing performed in Thailand fell short of effecting a substantial transformation, reasoning, in part, that no "single part exported from China to Thailand possessed the physical properties, mechanical, properties, or essential character of a complete TRB{,}" the article imported into the United States. *Id.* at 1293. Similarly here, the disc sourced from China does not possess the essential character of the finished trailer wheel imported into the United States. Rather, the imported wheel exhibits its essential character only after Asia Wheel manufactures the rim, welds the rim to the disc, and paints the wheel.

The Government, like Commerce below, also confuses the facts. The Government argues that "the rims and discs each maintain their essential characteristics and sole purpose of being incorporated into a finished steel wheel throughout processing in Thailand." Gov't. Response Br. at 22. Similarly, the Government asserts that "{t}he assembly in this proceeding is much simpler" than that addressed in *WorldPac*, "utilizing only two major components, both otherwise subject to

12

the orders as components." Gov't. Response Br. at 22 (citing *Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, from the People's Republic of China: Final Scope Ruling on WorldPac Inc.'s Wheel Hub Assemblies* (Sept. 11, 2019)). In both instances, the Government overlooks that, for the Method A Wheels at issue in this case, only the discs originate from China. The "substantial transformation" issue does not involve mere assembly in Thailand. Rather, Asia Wheel manufactures the rims in Thailand, welds the Thai-origin rims to Chinese-origin discs, and paints the trailer wheels.

Furthermore, neither the Government nor Dexstar confronts the logic of Plaintiffs' principal "substantial evidence" argument. In its *Final Scope Ruling*, Commerce recognized Dexstar's representation during the original AD/CVD investigations that "the rim and the disc are the essential components of the wheel. . . . {T}he properties and end uses of a wheel are determined by the physical properties of the rim and the disc, not by the assembly process." *Final Scope Ruling* at 29 (quoting Petitioner's Request for Clarification of Country of Origin Criteria (Mar. 1, 2019) at 8-9), Appx2810. Yet, despite recognizing that a finished wheel requires both a disc and a rim to exhibit its essential characteristics and achieve its function, Commerce "nonsensically reasoned that a Chinese-origin disc fails to become a new product – a complete and functional wheel – when it is welded to a Thai-origin rim and painted in Thailand." Pls. Br. at 31; *see also Peer Bearing Co.-Changshan v. United States*, 914 F. Supp. 2d 1343, 1352-53 (Ct. Int'l Trade 2013) ("{B}ecause no single part made in China possessed the essential character of a TRB, the Department's finding that the essential character of the finished TRBs was imparted in China, as opposed to Thailand, is a logical impossibility."). Consequently, Plaintiffs argued, Commerce failed to draw a "rational connection between the facts found" (*i.e.*, discs and rims are both essential components of a wheel) and "the choice made" (*i.e.*, the transformation of Chinese-origin

AMERICAS 127038407

discs into trailer wheels is not substantial).  The Government's and Dexstar's silence on this point speaks volumes.

In summary, as highlighted by Commerce's analysis of the "essential component" factor, Commerce's determination that Chinese-origin discs are not substantially transformed in Thailand is not in accordance with law and unsupported by substantial evidence.

### C.     The Government and Dexstar Fail To Demonstrate that Commerce Lawfully and Reasonably Determined that the Entire Finished Wheel Manufactured in Thailand Is Subject to the Scope of the *AD/CVD Orders*

Plaintiffs demonstrated that, in determining that the entire wheel imported from Thailand is subject to the *AD/CVD Orders*, Commerce impermissibly expanded the scope contrary to its terms and contradicted its own substantial transformation analysis.  *See* Pls. Br. at 32-34.  In response, the Government and Dexstar wrongly claim that Plaintiffs failed to cite authority supporting their position; avoid confronting the logic of Plaintiffs' argument; and confuse the issue with a mixed media analysis.

The scope of the *AD/CVD Orders* "includes **rims, discs, and wheels** that have been further processed in a third country . . . ."  *AD/CVD Orders*, 84 Fed. Reg. at 45954 (emphasis added).  As argued by Plaintiffs, with respect to the Method A Wheels at issue in this case, only Chinese-origin **discs** are further processed in Thailand.  *See* Pls. Br. at 32.  Consequently, in accordance with the plain language of the *AD/CVD Orders*, only the discs are included in the scope.  *See id.*  In response, the Government claims, "Plaintiffs have not cited authority that supports their position that Commerce should impose duty liability on only a portion of the imported article that is subject to the scope, despite express scope language covering third country processing."  Gov't. Response Br. at 29.  The Government is mistaken.  "Commerce cannot 'interpret' an antidumping order so as to change the scope of that order, nor can Commerce reinterpret an order in a manner contrary

to its terms." *Eckstrom Indus., Inc. v. United States*, 254 F.3d 1068, 1072 (Fed. Cir. 2001).  The legal authority upon which Plaintiffs rely is the scope of the *AD/CVD Orders* itself.

Moreover, the scope of the *AD/CVD Orders* recognizes "that Commerce should impose duty liability on only a portion of the imported article that is subject to the scope" (quoting Gov't. Response Br. at 29).  For example, the scope states that, "if the steel wheels or rims are imported as an assembly with a tire mounted on the wheel or rim and/or with a valve stem attached, the tire and/or valve stem is not covered by the scope." *AD/CVD Orders*, 84 Fed. Reg. at 45954.  The Government and Dexstar both avoided addressing this provision of the scope.

The Government highlights that Commerce also relied on "its substantial transformation analysis, to find that the **wheel components** processed in Thailand were not 'further processed in a third country' to the point of being rendered out-of-scope."  Gov't. Response Br. at 26 (emphasis added).[3]  Rather than supporting its argument, however, the Government's observation actually demonstrates the contradiction in Commerce's "substantial transformation" analysis.  Because Commerce determined that the Chinese-origin discs of the Method A Wheels were not substantially transformed in Thailand, it necessarily found that the discs maintain their identities as such – even after being converted into a finished wheel.  Likewise, in the absence of substantial

---

[3]  Confusingly, the Government also asserts that "Commerce conducted a substantial transformation analysis to determine whether Production Method A substantially transformed Asia Wheel's **steel wheels** to the point where it would be appropriate to designate the finished wheel as originating from Thailand, rather than as a wheel originating from China."  Gov't. Response Br. at 25 (emphasis added).  Commerce also incorrectly referred to the "finished wheels" as not being substantially transformed in Thailand and, hence, remaining "Chinese-origin wheels." *Final Scope Ruling* at 48, Appx2829.  This logic is nonsensical – and, thus, unsupported by substantial evidence – because the "substantial transformation" analysis necessarily begins with the upstream product (here, the Chinese-origin disc) as opposed to the downstream product (the finished trailer wheel imported into the United States). *See Peer Bearing*, 914 F. Supp. 2d at 1352 (finding that Commerce misstated the issue by asking whether the merchandise imported into the United States was substantially transformed in Thailand, as opposed to whether the Chinese-origin finished and unfinished parts imported into Thailand were substantially transformed).

AMERICAS 127038407

transformation, the Thai-origin rims (manufactured in Thailand from steel plates) also must retain their identities as such. It follows that, consistent with the plain language of the scope, only the Chinese-origin discs could be covered by the *AD/CVD Orders* and subject to AD/CVD. In concluding otherwise, Commerce failed to draw a rational connection between the facts found (*i.e.*, the Chinese-origin discs are not substantially transformed) and the choice made (*i.e.*, AD/CVD liability extends to the nonsubject rims of the imported wheels that also were not substantially transformed). Notably, neither the Government nor Dexstar attempted to defend Commerce's faulty logic, which Plaintiffs identified in their initial brief. *See* Pls. Br. at 33.

Lastly, the Government and Dexstar confuse the issue by observing that "{P}laintiffs do not contest Commerce's mixed media analysis (and thus have waived any criticism)." Gov't. Response Br. at 29 (citing *Walgreen Co. of Deerfield, IL v. United States*, 620 F.3d 1350, 1356-57 (Fed. Cir. 2010); *Mid Continent Nail Corp. v. United States*, 725 F.3d 1295, 1301-02 (Fed. Cir. 2013)); Dexstar Response Br. at 23 (same). Plaintiffs, however, agree this is not a "mixed media" case, and have not contended otherwise. Rather, as demonstrated above, Commerce's determination that the entire wheel imported from Thailand is covered by the scope of the *AD/CVD Orders* is impermissible under the plain language of the scope and inconsistent with its own "substantial transformation" analysis. Consequently, Commerce's decision is both not in accordance with law and unsupported by substantial evidence.

### D.    The Government and Dexstar Fail To Demonstrate that Commerce Lawfully Directed CBP To Continue To Suspend Liquidation of Imports Entered before the Importers Had Adequate Notice of AD/CVD Liability

Plaintiffs demonstrated that Commerce impermissibly directed CBP to continue to suspend liquidation of imports entered before importers had adequate notice that trailer wheels manufactured in Thailand with discs *or* rims (but not both) from China were covered by the *AD/CVD Orders*. *See* Pls. Br. at 34-45. In response, the Government and Dexstar misinterpret

AMERICAS 127038407

binding case law – which holds that notice of possible scope coverage in the future is not adequate notice – and wrongly contend that Commerce's scope authority is subservient to that of CBP in an Enforce and Protect Act ("EAPA") context.

### 1.    Possible scope coverage is not "adequate notice"

An "assessment of retroactive duties . . . is . . . unlawful" without "adequate notice" of AD/CVD applicability.  *See Trans Texas Tire, LLC v. United States*, 519 F. Supp. 3d 1275, 1287-88 (Ct. Int'l Trade 2021) ("*Trans Texas I*"); *Trans Texas Tire, LLC v. United States*, 519 F. Supp. 3d 1289, 1304-05 (Ct. Int'l Trade 2021) ("*Trans Texas II*").  Here, the Government argues importers had adequate notice because "Commerce held open ***the possibility*** that it might still find – with the benefit of further analysis – a steel wheel imported from a third country and manufactured using Chinese components to originate from China such that the orders would apply to that wheel."  Gov't Response Br. at 14 (emphasis added); *see also* Dexstar Response Br. at 24. Under binding case law, however, Commerce's intention to address a scope question in the future does ***not*** constitute adequate notice of AD/CVD liability to importers.

In *Tai-Ao II*, the Federal Circuit reaffirmed Commerce's legal mandate to provide "fair warning" or "adequate notice" to importers before subjecting imported merchandise to AD/CVD liability.  *See Tai-Ao Aluminum (Taishan) Co. v. United States*, 983 F.3d 487, 495 (Fed. Cir. 2020) ("*Tai-Ao II*").  The Federal Circuit further held that a stated intention to consider whether merchandise is subject to an AD/CVD order in the future fails to provide adequate notice.  *See id.* ("A statement of intention to 'consider whether the inquiry should apply to all imports' is not the same as a notice that such imports are within the scope of the inquiry.").  "The notice requirement reflects 'the broader due-process principle that before an agency may enforce an order or regulation by means of a penalty or monetary sanction, it must 'provide regulated parties fair warning of the conduct [the order or regulation] prohibits or requires.'"  *Id.* (citations omitted).

Citing the following sentence from the *Final INV Scope Memo*, the Government argues that "Commerce's express statement that future merchandise ***may*** be the subject of a future scope inquiry, including a substantial transformation analysis, conveyed sufficient notice to any reasonably informed importer":

> Commerce does not foreclose a further analysis of substantial transformation should a product be completed in a third country from a mix of rim and disc parts from China and a third country, if an interested party requests a scope ruling and/or to address a future circumvention concern.

Gov't. Response Br. at 30 (citing *Final INV Scope Memo* at 24, Appx80022); *see also* Dexstar Response Br. at 24.  In accordance with the Federal Circuit's decision in *Tai-Ao II*, however, a stated intention to consider a scope question in the future fails to provide adequate notice.  *See Tai-Ao II*, 983 F.3d at 495.  Nor do the Government's attempts to distinguish *Tai-Ao II* (which involved a circumvention inquiry) override "the broader due-process principle" that Commerce must provide importers with adequate notice of AD/CVD applicability – ***not*** notice of ***possible*** AD/CVD applicability in the future.  *See id.*; *see also Trans Texas I*, 519 F. Supp. 3d at 1287-1288 ("*Tai-Ao I* and *Tai-Ao II* clearly show that adequate notice is essential where Commerce attempts to apply retroactive duties.").

Moreover, the isolated sentence relied upon by the Government and Dexstar – that "Commerce does not foreclose a further analysis of substantial transformation . . . " – failed to notify importers of even the ***possibility*** that steel wheels manufactured in third countries with discs ***or*** rims from China could be within the scope of the *AD/CVD Orders*.  As demonstrated above in **Section II.A**, this isolated line from the *Final INV Scope Memo* does not mean that Commerce deferred the scope question with respect to such wheels in the original AD/CVD investigations.  To the contrary, in response to importers' specific request, Commerce confirmed just two sentences later that "the existing language sufficiently conveys the concept that third-country

processing of a steel wheel ***must be of rims <u>and</u> discs produced <u>in China</u>*** . . . ." *Final INV Scope Memo* at 24 (emphasis added), Appx80022.  Furthermore, Commerce stated that it "does not foreclose a further analysis of substantial transformation should a product be completed in a third country from a mix of rim and disc ***parts***" – ***<u>not</u>*** a "mix of rims and discs." *Id.* (emphasis added).

Lastly, Commerce itself acknowledged in the contested scope proceeding that importers lacked adequate notice that the Method A Wheels at issue could be subject to the *AD/CVD Orders* until March 22, 2021, the date Commerce initiated the scope inquiry requested by Asia Wheel. *See Final Scope Ruling* at 41, Appx2822 ("{A}ny ambiguity that the *specific* steel wheels manufactured by Production Methods A and C may be subject to liabilities was established by the March 22, 2021, Asia Wheel Initiation memorandum, and the explicit mention of the merchandise in question therein constituted fair warning to any reasonably informed importer.").

Despite the lack of adequate notice until March 22, 2021, Commerce directed CBP to continue the prior suspension of liquidation imposed in the parallel EAPA Investigation, Case No. 7459. *See Final Scope Ruling* at 45-46, Appx2826-2827.  CBP's suspension of liquidation applies to the Importers' entries of Method A Wheels from Thailand back to April 9, 2020 – nearly one year before the Importers were provided with adequate notice of the *AD/CVD Orders'* coverage from Commerce. *See CBP Initiation* at 8, Appx80118.  By declining to instruct CBP to terminate its prior suspension of liquidation, Commerce unlawfully subjected the Importers' entries to retroactive AD/CVD assessment without fair warning – at a combined AD/CVD rate exceeding 400%. *See AD/CVD Orders*, 84 Fed. Reg. at 45954.

### 2.    Commerce, not CBP, has the ultimate authority to determine whether and when merchandise is subject to an AD/CVD order

Like Commerce below, the Government and Dexstar wrongly maintain that Commerce lacked the authority to instruct CBP to terminate its prior suspension of liquidation, because CBP

AMERICAS 127038407

suspended liquidation pursuant to its independent authority under the EAPA, 19 U.S.C. § 1517(e). *See* Gov't. Response Br. at 34; Dexstar Response Br. at 26. While CBP may have had initial authority to suspend liquidation under the EAPA, Commerce has the ultimate authority to determine whether imported merchandise is subject to an AD/CVD order, as recognized by the EAPA itself. Here, in accordance with that authority, Commerce was bound by due-process principles to instruct CBP to terminate its prior suspension of liquidation.

Commerce has the ultimate authority to determine whether ***and when*** a product is within the scope of an order, subject to the due-process requirement of providing fair warning. *See Sunpreme Inc. v. United States*, 946 F.3d 1300, 1321 (Fed. Cir. 2020) (recognizing that CBP cannot "'modify Commerce's {scope} determinations' or otherwise impinge on Commerce's authority to issue and set the scope of duty orders"); *see also Canadian Solar, Inc. v. United States*, 918 F.3d 909, 917 (Fed. Cir. 2019) ("Commerce has the authority to . . . define the scope of an order consistent with the countervailing duty and antidumping duty laws.") (citation omitted).

The EAPA itself recognizes that Commerce has the ultimate authority to determine whether the merchandise at issue is covered merchandise. "Covered merchandise" means "merchandise that is subject to" an AD/CVD order. 19 U.S.C. § 1517(a)(3). In EAPA cases where CBP "is unable to determine whether the merchandise at issue is covered merchandise," CBP is required to refer the scope question to Commerce and to abide by Commerce's scope determination in response to the "covered merchandise referral." 19 U.S.C. § 1517(b)(4); *Aspects Furniture Int'l Inc. v. United States*, 607 F. Supp. 3d 1246, 1268 (Ct. Int'l Trade 2022) ("The Court notes that the EAPA statute states clearly that Commerce, not Customs, is the appropriate administering authority to issue a referral determination of whether merchandise is covered or not.") (citing 19 U.S.C. § 1517(b)(4)(A)(i), (B)). Inherently, a determination of whether imported

AMERICAS 127038407

merchandise is "subject to" an order may also entail **when** the merchandise **became** subject to the order.

Here, CBP issued a covered merchandise referral to Commerce pursuant to 19 U.S.C. § 1517(b)(4)(A) because it was "unable to determine whether the merchandise at issue is covered merchandise . . . ." *CBP Referral* at 2, Appx1387. Because the Importers lacked adequate notice that Method A Wheels from Thailand could be subject to the *AD/CVD Orders* until March 22, 2021, Commerce was bound by due-process principles and the Federal Circuit's decision in *Tai-Ao II* to instruct CBP that imports of such wheels entered before that date are not subject to the *AD/CVD Orders* and to terminate CBP's suspension of liquidation with respect to such imports. Commerce's failure to do so was unlawful. In arguing that Commerce lacks authority to direct a suspension of liquidation imposed by CBP under the EAPA, the Government and Dexstar ignore that Commerce – not CBP – has the ultimate authority to determine an AD/CVD order's scope.[4]

Dexstar argues that, in declining to instruct CBP to terminate its prior suspension of liquidation, "Commerce properly applied its regulations in 19 CFR § 351.225(l) that govern the

---

[4] The Government cites *Diamond Tools Tech. LLC v. United States*, 545 F. Supp. 3d 1324, 1351 (Ct. Int'l Trade 2021) for the proposition that "Commerce's actions under its own statutes do not 'diminish Customs' authority under the EAPA to apply Commerce's affirmative covered merchandise determination to all entries covered by the EAPA investigation.'" Gov't. Response Br. at 35; *see also* Dexstar Response Br. at 27. In *Diamond Tools*, however, the court upheld **CBP's decision** to continue a prior suspension of liquidation imposed under the EAPA, where Commerce had not imposed any temporal limitation on CBP's authority to suspend liquidation in its response to a covered merchandise referral. *See* 545 F. Supp. 3d at 1348. Here, in contrast, Plaintiffs contest **Commerce's** unlawful decision to continue a prior (and retroactive) suspension of liquidation in violation of the "broader due-process principle" that importers must have fair warning before their imported merchandise is subject to AD/CVD liability. *See Tai-Ao II*, 983 F.3d at 495. Nor did the court in *Diamond Tools* address that Commerce's ultimate authority to determine the scope in response to an EAPA covered merchandise referral inherently includes the authority to determine **when** imports of the merchandise at issue first became "subject to" an AD/CVD order. CBP does not have authority under the EAPA to determine when merchandise became covered merchandise ("subject to" an AD/CVD order, 19 U.S.C. § 1517(a)(3)); that authority is reserved for Commerce.

21

liquidation of entries following a scope determination." Dexstar Response Br. at 24. Commerce's regulation, however, cannot override "the broader due-process principle" that adequate notice must be afforded before imports are subject to AD/CVD liability. *Tai-Ao II*, 983 F.3d at 495. Citing *Sunpreme*, Dexstar also contends that, "once Customs had suspended liquidation for the merchandise under its *independent* authority, section {351.}225(l) gave Commerce no leeway to act in any way other than as Commerce did once it made an affirmative scope determination and directed Customs to continue that suspension." Dexstar Response Br. at 26. Unlike here, however, in *Sunpreme* the Federal Circuit held that Commerce was required under 19 C.F.R. § 351.225(l) to continue CBP's prior suspension of liquidation, where CBP properly had determined that the merchandise at issue was within scope. *See Sunpreme*, 946 F.3d at 1317-18. Here, in contrast, CBP was unable to determine whether the Method A Wheels are within scope and referred that question to Commerce pursuant to 19 U.S.C. § 1517(b)(4)(A). Furthermore, unlike here, where continuing CBP's prior suspension of liquidation would subject entries to AD/CVD liability before importers were given fair warning that their imported merchandise was covered by the scope, "retroactivity concerns" were not raised in *Sunpreme*. *See id.* at 1319.

In summary, by not directing CBP to terminate its prior suspension of liquidation under the EAPA, Commerce impermissibly relied on 19 C.F.R. § 351.225(l) in contravention of its broader due-process obligation to provide adequate notice to importers of the *AD/CVD Orders'* scope. The Government and Dexstar fail to defend Commerce's decision to continue CBP's suspension of liquidation because they ignore that Commerce has the ultimate authority to determine whether imported merchandise is subject to the *AD/CVD Orders*, which necessarily includes a determination as to ***when*** the merchandise first became subject to the orders.

22

## III.    CONCLUSION

For the reasons discussed above, Plaintiffs respectfully request that the Court enter judgment in their favor.

Respectfully submitted,

/s/ Jay C. Campbell
Jay C. Campbell
Walter J. Spak
Chunfu Yan
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
(202) 626-3600
jcampbell@whitecase.com
*Counsel to Plaintiff Asia Wheel Co., Ltd.*

/s/ Nancy A. Noonan
Nancy A. Noonan
Yun Gao
Leah N. Scarpelli
ArentFox Schiff LLP
1717 K Street, NW
Washington, DC 20006-5344
(202) 857-6479
nancy.noonan@afslaw.com
*Counsel to Plaintiff-Intervenor Dexter
Distribution Group LLC f/k/a TexTrail, Inc.*

/s/  Jordan C. Kahn
Jordan C. Kahn
GRUNFELD DESIDERIO LEBOWITZ
SILVERMAN & KLESTADT, LLP
1201 New York Ave., NW Ste. 650
Washington, DC 20005
(202) 661-7784
jkahn@gdlsk.com
*Counsel to Consolidated Plaintiff TRAILSTAR
LLC*

/s/ R. Kevin Williams
R. Keving Williams
Clark Hill

AMERICAS 127038407

130 E. Randolph Street, Suite 3900
Chicago, IL 60601
(312) 985-5907
kwilliams@clarkhill.com

*Counsel to Consolidated Plaintiff Lionshead Specialty Tire and Wheel LLC*

Date:  May 31, 2024

AMERICAS 127038407

**CERTIFICATE OF COMPLIANCE**

Pursuant to Chambers Procedure 2(B)(1), the undersigned certifies that this brief complies with the word limitation requirement.  The word count for the Reply Brief filed by Asia Wheel Co., Ltd.; Dexter Distribution Group LLC f/k/a TexTrail, Inc.; TRAILSTAR LLC; and Lionshead Specialty Tire and Wheel LLC, as computed by White & Case LLP's word processing system (Microsoft Word 2016) is 6,808 words.

/s/ Jay C. Campbell
Jay C. Campbell

Date:  May 31, 2024